MORGAN vs. HAMMETT and others.

TAXES: TAX TITLES: RIGHT OF ACTION. (1) *Who may bring action to test validity of tax.* (2) *When entire rights of parties adjudicated in one action.* (3) *Notice of* lis pendens, *as affected by plaintiff's laches.* (4) *Owner of equity of redemption, in possession, bound to pay taxes.* (5, 6) *When second mortgagor acquires no lien for repayment of taxes as against first mortgagor.* (7) *Doctrine of merger inapplicable.*

1. Under ch. 123, Laws of 1860, as amended by ch. 240, Laws of 1861, *one who has a lien* upon real estate by mortgage or judgment, has the same *right of action* as the owner in fee, to test the validity of any tax, charge or assessment on such real estate, or of any tax sale thereof,

Morgan vs. Hammett and others.

and to annul such tax, charge, assessment or sale, and enjoin the sale or conveyance of the land, on account thereof.

2. The plaintiff in such an action had, at the commencement thereof, a mortgage or judgment lien on the whole of one tract of land, covered by defendant's tax deeds and certificates, and on an undivided fourth part of the remainder, and therefore had a right to maintain the action; and during its pendency he obtained judgment in another suit, which, by correcting a misdescription in his mortgage, and by subrogating him to the rights of another person, gave him a lien upon the *whole* of the land covered by said tax deeds and certificates. *Held*, that the *entire rights* of the parties in reference to such tax deeds and certificates, should be *adjudicated in the present action*, the question having been fully litigated, and the court being in possession of all the facts; and plaintiff should not be compelled to bring another action to get rid of defendant's tax deeds of the land which, by reason of such misdescription, was not included in his mortgage when this action was brought.

3. Where plaintiff had a clear right to be subrogated in some form of action to the rights of one who held a mortgage on all the lands of an estate, and to the rights of other creditors of such estate, and also to have a certain misdescription in a mortgage to himself of land of such estate corrected, all persons were *bound to take notice* of his rights during the pendency of an action brought by him to assert them; and the fact that after a decision in this court against him in such action, he allowed his motion for a rehearing to remain unheard for five years, was not such *laches* as would protect one who advanced moneys to the heirs of such estate upon the credit of such lands — the heirs not having taken any steps to procure either a *dismissal* of such motion for a rehearing, or a submission thereof to the court.

4. The owner of the equity of redemption of land, being in possession, is *legally bound to pay the taxes*.

5. One who, to secure the payment of moneys due him from such owner, and of advances which *he agrees to make*, to pay taxes which have accrued or may accrue upon the lands, takes a mortgage of the land (in this case a deed absolute on its face, with an oral agreement to reconvey on payment of such debt and advances, with interest at ten per cent.), acquires *no lien* upon the land for the *repayment of the taxes*, as against the *prior mortgagee*.

6. The grantee or second mortgagee in such a case bought up outstanding tax certificates, and afterwards bought the lands upon tax sales, and took tax deeds upon such certificates and sales; and, in an action by the first mortgagee to cancel such tax deeds, it was adjudged that the deeds were void, and that the plaintiff was entitled to the relief sought

*upon condition* that he repay within a time limited the amounts so advanced by such grantee for taxes. That part of the judgment which declared the tax deeds void not being appealed from: *Held*, upon plaintiff's appeal, that so much of the judgment as makes the relief *conditional*, was erroneous.

7. Plaintiff having, during the pendency of this action, purchased the lands at a sale on foreclosure of his mortgage, his equitable title as mortgagee will not be treated in this suit as *merged* in his legal title as purchaser; the interest asserted under the tax deeds having intervened before his purchase, and it being for his interest that the estates be kept distinct.

APPEAL from the Circuit Court for *La Fayette* County.

The preliminary transactions out of which this action arose are sufficiently stated in the report of the case of *Morgan v. Hammett and others*, 23 Wis., 30, and such statement will not be repeated here.   While that cause was pending in this court on the motion for a rehearing thereof, and on the 2d of November, 1865, George Hammett and his wife Charlotte, together with all of the other heirs-at-law of Frederick Shadwick, deceased, joined in a conveyance to the defendant *Henry S. Magoon*, of all the lands of which said Shadwick died seized and of the tract which the intestate in his life time had conveyed to George Hammett.   On the same day Hammett and wife executed to *Magoon* a quitclaim deed of the same lands. Both conveyances were absolute in form, but they were given, in fact, as security for a debt of seven hundred dollars which Hammett and wife then owed *Magoon*, and also as security for further advances to be made by *Magoon* to pay taxes which had accrued and which might thereafter accrue on such lands.

Immediately after the execution of such conveyances, *Magoon* purchased several tax certificates upon such lands, upon which he caused tax deeds to be issued to himself, and placed such deeds on record.   He also, from time to time, purchased other certificates thereafter issued, and received and recorded other tax deeds to himself for the same land, issued upon such certificates.

On October 30, 1868 (which was after the above cause had been decided by this court, but before judgment was entered therein by the circuit court), this action was commenced to set aside and cancel such tax deeds and the certificates upon which they were issued. Final judgment was rendered in the first action, pursuant to the mandate of this court, December 12, 1868.

In this action, the circuit court held that such tax deeds and certificates were and are null and void as to the lands of which Shadwick died seized, and gave judgment for the plaintiff to that extent for the relief demanded by him, but upon the following condition : " Provided, however, and upon this express condition, that the said plaintiff shall pay, within two years from this date, unto the defendant *Henry S. Magoon*, the sum of $350.87, hereby found and adjudged to be equitably due to the said *Magoon* for moneys advanced by him to pay taxes heretofore assessed upon the aforesaid real estate, the taxes so paid by the said *Magoon* being the same upon which said tax deeds and said tax certificates hereinbefore described are based. It is further adjudged that until payment of said sum be made by the plaintiff to the said defendant *H. S. Magoon*, with interest from the date hereof, this judgment shall be and remain of no force and effect in favor of the plaintiff."

The plaintiff appealed from that portion of the judgment above quoted, which makes the relief granted conditional upon payment of the sum therein mentioned.

All other material facts in the case are sufficiently stated in the opinion.

*P. A. Orton*, for appellant, argued that plaintiff's right to maintain the action rested upon the fact that at its commencement he had liens upon the land. Laws of 1861, ch. 240 ; *Avery v. Judd*, 21 Wis., 262 ; *International Insurance Co. v. Scales*, 27 id., 642. The defendants in this case were all defendants in the Rock county case, or claim under such defendants by purchase and deed, or by inheritance, and after the

filing of notice of the pendency of that action.    They are there-fore concluded by the finding and judgment in that case. Hermann on Estoppel, § 92, 170 ; *Pierce v. Kneeland*, 9 Wis, 29 ; *Finney v. Boyd*, 26 id., 369 ; *Shepardson v. Cary*, 29 id., 37.    2. If plaintiff was entitled to this remedy when the suit was begun, he is still entitled to the full measure of relief sought, no mat-ter what changes in his interest may have since intervened. *Magoon*, in paying taxes and acquiring the tax deeds, acted as the agent of the Hammetts, his agreement with them being to pay all the taxes and to hold the title as security until he was repaid his advances.    The validity of these tax titles must therefore be determined as if they ran directly to the Ham-metts.    Thus considered, they are void.    (1.) The Hammetts being in possession of the lands, which were assessed in their names, it was their duty to pay the taxes, and the acquisi-tion by them of the tax deeds is a fraud upon plaintiff, and the purchase of the tax certificates was equivalent to redemption. *Smith v. Lewis*, 20 Wis., 353 ; *Bassett v. Welch*, 22 id., 175 ; *Jones v. Davis*, 24 id., 230 ; *Lybrand v. Haney*, 31 id., 233 ; *Whitney v. Gunderson*, id., 361.    (2.) By a covenant in their mortgage to plaintiff, the Hammetts were bound to pay these taxes.    This covenant is as binding upon *Magoon* as upon them, and taking the tax deeds is a fraud upon this covenant. Opinion of DIXON, C. J., in *Smith v. Lewis, supra*; *Avery v. Judd*, 21 Wis., 264; *McMahon v. McGraw*, 26 id., 619.    (3.) The above cases also hold that the taking of a tax deed by the owners of the equity of redemption is payment of the taxes, and no title is acquired thereby, independent of any covenant, or the fact of possession.

*William E. Carter*, also for appellant, contended that if *Ma-goon* were to be regarded as the owner of the fee, as his title appeared of record, then his purchase of the tax certificates, however valid they might be in the hands of any one else, was a payment of the taxes, because in such case the possession of the Hammetts was beyond question the possession of *Magoon*,

they holding the land for his, benefit, and he being in duty bound to pay the taxes. *Smith v. Lewis* and *Bassett v. Welch, supra.* But if *Magoon* can be heard to say that he was really a mortgagee, instead of the owner of the fee, his position is no better, since it is well settled that the possession of a mortgagor is the possession of his mortgagee, at least to the extent that such possession can not be adverse to the mortgagee. *Avery v. Judd,* 21 Wis., 262 and cases cited; *Connor v. Whitmore,* 52 Me., 185. Again, the Hammetts, who were among the grantors to *Magoon,* were in the actual possession of the property, and had expressly covenanted in the mortgage to the plaintiff to pay the taxes. They received the rents and profits of the land; it was assessed to them; and the value of its use greatly exceeded the amounts of the taxes. Whether, therefore, *Magoon* be considered as a second mortgagee, or as owner of the equity of redemption by direct purchase, he can in neither case set up as against the mortgagee, tax titles obtained in consequence of the nonpayment of taxes levied after the first mortgage was given, and while the mortgagor was in actual possession of the premises, receiving and enjoying the rents and profits. Neither can he ask from the first mortgagee repayment of any money he may have advanced to obtain those tax titles, as a condition precedent to setting them aside; because, to require this would be to hold them valid in his hands, at least to secure the repayment of the taxes, and this would be equivalent to holding that he took the premises from the mortgagor discharged of the obligation to pay the taxes. *Cortleyeu v. Hathaway,* 3 Stockt. (N. J.), 39.

*Henry S. Magoon, contra,* contended that plaintiff could not maintain this action, because, (1.) A plaintiff's right to maintain an action is measured by the law and facts as they exist at the time of instituting suit. (2.) The judgment of subrogation amounts to a conveyance of the land, and this conveyance was not only not recorded, but was not in existence when this suit was begun, and has never been recorded in La Fayette county.

Morgan vs. Hammett and others.

*Magoon's* mortgage and tax deeds had been recorded nearly three years before this suit was begun, and as against them *Morgan's* judgment conveyance, never recorded, is absolutely void, and does not found any right of action. R. S. 1858, ch. 86, secs. 25, 34, 35; 1 Tay. Stats., 1147, §§ 27, 35, 39, 40; Laws of 1859, ch. 157, sec. 1; *Deuster v. McCamus*, 14 Wis., 307; *Straight v. Harris*, id., 509; *Fallass v. Pierce*, 30 id., 443. (3.) The purview of ch. 240, Laws of 1861, and ch. 123, Laws of 1860, is expressly limited to the holder of an actual and subsisting mechanic's lien, attachment, judgment or mortgage, or the purchaser on execution or foreclosure. These statutes do not extend to the holder of a mere equity. As *Morgan* had no judgment when this suit was begun, these statutes afford no foundation for this action. The reasoning of this court in *Avery v. Judd*, 21 Wis., 262, applies with conclusive force, that as this plaintiff has no statute authority to maintain this suit, he can not maintain it at all. 2. *Magoon*, as mortgagee, had the right to obtain tax liens, or other outstanding liens, paramount to that of *Morgan*. R. S. 1858, ch. 18, sec. 161; *McNary v. Southworth*, 58 Ill., 473; *Higgon v. Syddal*, 1 Chan. Cas., 149; *Williams v. Townsend*, 31 N. Y., 415; *Wright v. Sperry*, 25 Wis., 620; *Harrison v. Roberts*, 6 Fla., 711; *Babcock v. Jordan*, 24 Ind., 14; *Walthall v. Rivers*, 34 Ala., 92; *Sturdevant v. Mather*, 20 Wis., 585; *Bloom v. Noggle*, 4 Ohio St., 45; *Griffin v. Marine Co.*, 52 Ill., 130; *Roberts v. Fleming*, 53 id., 204; *Robinson v. Davison*, 1 Brown Ch., 63; 1 Washb. R. P., 550, § 7a; 1 Story's Eq. Jur., § 416. 3. *Magoon's* case is excepted from the operation of the doctrine of *lis pendens* by *Morgan's* own laches in having allowed his cause to sleep unnoticed and unargued in the supreme court, on motion for rehearing, for almost five years, with the decision against him that he had no right of subrogation. Such unreasonable delay and gross laches absolutely discharged the property from said subrogation. And *Magoon's* mortgage, acquired long afterward in good faith and for value, was wholly discharged from the effect of the *lis pen-*

*dens*, and the judgment therein. *Trimble v. Boothby*, 14 Ohio, 109; *Watson v. Wilson*, 2 Dana, 406; *Myrick v. Selden*, 36 Barb., 22; *Edmeston v. Lyde*, 1 Paige, 638; *Lyle v. Smith*, 13 How. Pr., 104; *Winborn v. Gorrell*, 3 Ired. Eq., 117; *Lee County v. Rogers*, 7 Wall., 181; *Price v. McDonald*, 1 Md., 403, 412. 4. Two years before the amended complaint, under which the action was tried, was served, plaintiff, under his judgment of subrogation, had sold the premises and obtained a sheriff's deed therefor; thereby his lien and his judgment of subrogation were merged in such deed. This was an abatement of the present action, as defendants insisted by their answer; and plaintiff's remedy, if any, was by ejectment. *Deery v. McClintock*, 31 Wis., 202; *Tallman v. Ely*, 6 id., 258; *Gardner v. Astor*, 3 Johns. Ch., 53; *James v. Morey*, 2 Cow., 300; *James v. Johnson*, 6 Johns. Ch., 423.

LYON, J. I. The defendants claim that the action was prematurely brought. It is said to be founded entirely upon the judgment in the first action, which was not entered when this action was commenced. If that judgment is the sole basis of this action, the point would seem to be well taken. If so, the plaintiff is not entitled to any judgment, and we can not, on his appeal, modify the judgment in his favor. In such case he must take what the court gave him, or dismiss his action. The question is, therefore, Had the plaintiff a right of action before such judgment was entered? Ch. 123, Laws of 1860, as amended by ch. 240 of Laws of 1861, gives to a person who has a lien upon real estate by mortgage or judgment, the same right of action that the owner in fee has, to test the legality and validity of any tax, charge or assessment on such real estate, or any tax sale thereof, and to annul such tax, charge, assessment or tax sale, and to enjoin the sale or conveyance of the land on account thereof.

It appeared in the first action that, in 1858, the plaintiff commenced an action in the circuit court for La Fayette county,

to foreclose his mortgage executed by Hammett and wife, and that the same was pending when the action first above mentioned was tried, in 1862. (23 Wis., 33.) *Mr. Magoon* states, in his brief, that a judgment of foreclosure and sale was entered therein in 1859. If that fact was proved on the trial of this action, we have overlooked the evidence which proves it. But it is quite immaterial whether such action has or has not been prosecuted to judgment. If it has not, the plaintiff, when he commenced this action, had a lien by mortgage upon some portion, at least, of the lands affected by the tax deeds; but if that action was prosecuted to judgment, as claimed, then the plaintiff had the same lien by judgment. In either case he is within the provisions of the laws of 1860 and 1861 above mentioned, in respect to that portion of the real estate to which his lien attached. It is indisputable that the plaintiff had a lien, either by mortgage or judgment, when this action was commenced, on that portion of sec. 30 which Frederick Shadwick conveyed to Hammett, and on the interest of Mrs. Hammett — being one-fourth thereof — in the lands on sec. 30 of which Shadwick died seized. The first tract contains sixteen, and the latter ninety-eight acres.

The judgment recovered in the circuit court for Rock county, by correcting the misdescription of the land on section 29 included in the mortgage, and by subrogating the plaintiff to the original rights of Priddeaux and the other creditors of the estate of Shadwick, whose claims were paid with the money loaned by the plaintiff to the Hammetts, rendered the mortgage of the plaintiff as broad and comprehensive in fact, as it was in terms and intent. The Hammetts assumed to mortgage to the plaintiff all of the land in controversy on section 30, and attempted to mortgage that on section 29. The judgment carried out the manifest purpose and intention of the parties.

The plaintiff having an undoubted right of action in respect to some portion of the land when this action was commenced, no good reason is perceived why all of the rights of the parties

pertaining to all of the tax deeds and tax certificates may not be fully adjudicated in this action, although such rights may be affected by the judgment entered after this action was commenced. Those rights were determined by this court before the commencement of this action, the whole matter has been fully litigated, the court is in possession of all the facts, and it seems clear that the whole controversy may be disposed of in this action without injury to either of the parties. If the plaintiff is entitled to recover, it would be manifestly unjust to confine the relief awarded him to the land on section 30, and compel him to bring another action to get rid of the tax deeds of the land on section 29.

The case, in principle, may not be unlike an action brought to foreclose a mortgage given to secure a debt payable in installments. If no installment was due when the action was commenced, although one or more might become due before the trial, the action would necessarily fail. But if any sum, however small, was due at the commencement of the action, the plaintiff would be entitled to judgment of foreclosure and sale, not only for the amount so due, but for any amount which became due afterwards, and before the trial.

We are of the opinion that the action was not prematurely commenced, and, hence, that the plaintiff is in a position to demand a reversal or modification of that portion of the judgment from which he has appealed, if the same is erroneous.

II. Without discussing the point at length, we think that all of the defendants were chargeable with notice, through the whole time of the litigation of the plaintiff's equities. His right, in some form of action, to be subrogated to the rights of Priddeaux and the other creditors of the estate, whose demands his money had paid, and to have the misdescription in his mortgage of the land on section 29 corrected, was perfectly apparent from the first; and after the filing, in 1860, of notice of the pendency of the action brought to accomplish those results, no person could safely assume that the plaintiff had failed in

such action until an unreversed and a final judgment against him could be produced. The fact that the first decision of this court, in 1863, was adverse to the plaintiff, will not aid the defendants. They are all chargeable with notice that when the conveyances were executed to *Mr. Magoon*, a motion for a rehearing of the cause was pending in this court.

In relation to the objection that the plaintiff was guilty of *laches* in allowing the cause to rest for five years in this court, it is only necessary to observe that the Hammetts and the other heirs-at-law of Shadwick, who were defendants in that action, could, at any term of the court during that time, have procured a dismissal of the motion, or could have compelled the plaintiff to submit it to the court for decision. *Mr. Magoon* was legally chargeable with notice of the status of the case, and should have required the defendants therein to take the steps above indicated before advancing his money on the faith of such first decision.

III. The judgment of the circuit court in this action is, that the tax deeds, so far as they relate to lands of which Shadwick died seized, are void, at least that they are void as to the plaintiff. This portion of the judgment is not appealed from. Hence we are to regard the $350.87, expended by *Mr. Magoon* in purchasing tax certificates, as a payment of taxes to that amount. This brings us to consider whether that portion of the judgment is erroneous which requires the plaintiff, as a condition precedent to obtaining the relief he seeks, to pay *Mr. Magoon* the amount paid by him for such certificates.

To determine this question, it is necessary to ascertain the precise circumstances or conditions under which *Mr. Magoon* paid his money for those certificates. We readily obtain this information from his own testimony, given on the trial. After stating that the deeds of November 2, 1865, were executed to him as security for his advances to the Hammetts and for professional services, then amounting to $700, and that he paid immediately thereafter $294.55 for tax certificates, deeds, stamps, etc., and the

further sum of $56.32 for taxes subsequently accruing, he proceeded to testify as follows: " November 2, 1865, when they made the deed to me, I agreed to pay the taxes which then remained unpaid, as follows: I told them I should pay the taxes then unpaid, and when they repaid me the taxes and ten per cent. interest thereon, including the other money due and interest, I would deed the land back. But if they never paid me, I should hold the title. This agreement, according to my understanding, *includes all the taxes I have ever paid on the land.*"

It necessarily results from the facts thus testified to by *Mr. Magoon*, that the deeds of November 2, 1865, are mortgages, or perhaps, more correctly speaking, they together constitute a mortgage to secure the $700 which the Hammetts then owed *Magoon*, and also the $350.87 which the latter afterwards advanced for taxes. The learned circuit judge, in his findings of law, gave prominence to the fact that *Magoon's* security was in the form of absolute conveyances, and held that the plaintiff, having no knowledge to the contrary, had the right to consider *Magoon* as the owner of the equity of redemption, and primarily liable to pay the taxes. We see no good reason to question the correctness of such holding. But it is more favorable to the defendants to treat such conveyances the same as though the Hammetts and the other heirs-at-law of Shadwick had, instead thereof, executed to *Magoon* a mortgage upon the same land, in the usual form, to secure the payment of $1,050.87, containing a recital that $700 of the amount had already been advanced to the mortgagors, and that the balance was to be thereafter advanced by the mortgagee for the purpose of paying the taxes which had then accrued or might thereafter accrue on the mortgaged premises.

Were this a case wherein the second mortgagee had paid taxes which he was under no legal obligation, by contract or otherwise, to pay, but which he paid only to protect his security, we are not prepared to say that the judgment ought to be disturbed. In such case, it would be no more the duty of the

second than of the first mortgagee to pay the taxes, and perhaps equity would require the latter to reimburse the former, in whole or in part. But we do not here pass upon the relative rights and obligations of the first and second mortgagees in such a case, because we are satisfied that *Mr. Magoon* is not in a position to invoke in his favor this equitable rule, if it be a rule. It seems to us that, by his agreement with the Hammetts, *Mr. Magoon* took upon himself the duty and obligation of paying the taxes for the mortgagors, and that he is in no better condition to call upon the plaintiff to repay the amount than the Hammetts would have been in had they paid the same out of their own funds. Stated in another form, we think that the transactions, in substance and legal effect, amount to a payment of the taxes on the mortgaged premises by the mortgagors (who, being the owners of the equity of redemption, and in actual possession of the land, were legally and primarily liable to pay the same), out of moneys loaned to them for that purpose by *Mr. Magoon*. The latter, doubtless, could be subrogated to the rights of the mortgagors in respect to such payment, but this would give him no remedy against the plaintiff.

IV. During the pendency of this action, the mortgaged premises have been sold and confirmed to the plaintiff, pursuant to the judgment of the circuit court for Rock county rendered in the former action, thus uniting in him the legal and equitable title. It is claimed that by operation of the doctrine of merger, the equitable title or lien of the plaintiff which he had when the tax certificates were purchased and the tax deeds issued thereon, has been destroyed, and that thereby the present action is necessarily abated. We do not so understand the doctrine of merger. Where the equitable and legal title become vested in the same person, if some other interest has intervened, there is no merger. Neither is there any merger where it is for the interest of the mortgagee that the estates be kept distinct. 2 Washburn on Real Property, 180. Here the interest

asserted under the tax deeds intervened before the legal title vested in the plaintiff, and was then outstanding, which prevents a merger.

From the best consideration we have been able to give the case, we are impelled to the conclusion that the circuit court erred in requiring the plaintiff to refund to the defendant *H. S. Magoon* the moneys paid by him for taxes on the premises described in the tax deeds.

The portion of the judgment appealed from must be reversed, and the cause remanded for further proceedings in accordance with this opinion.

*By the Court.* — It is so ordered.