Aiken vs. The Milwaukee & St. Paul Railway Company, impleaded, etc.

AIKEN VS. THE MILWAUKEE & ST. PAUL RAILWAY COMPANY, impleaded, etc.

37   469
95   440
37   469
106  537

MERGER OF TITLE. (1) *When, happens.  Not, when estates do not meet in same person.  Meeting of mortgage estate and equity of redemption do not necessarily cause.  In equity intent governs.  Subsequent purchaser can not rely on record to show merger.  Held charged with laches.*

FORECLOSURE SALE. (2) *When in inverse order of alienation.* (3, 4) *To determine order, all defendants must be notified.* (5) *May be determined after judgment on proper application.  Practice in.*

FORECLOSURE ACTION: RIGHT OF RAILWAY COMPANY TO APPRAISEMENT IN. (6, 7.) *Must apply therefor.  Judgment not error, when no application made.  Ch. 119, Laws of 1872, construed.*

1. A railroad company, after taking and recording a mortgage of land and assigning it to A., who did not record the assignment, acquired the fee of a part of the same land, and then executed a trust deed of the land so held by it in fee (with a large amount of other property), to secure its bonds; and this deed was recorded.  On a subsequent foreclosure of said trust deed, the property described in it was sold to persons who organized the *M. & St. P. Railway Co.*, which took and has ever since held possession of the land, putting valuable improvements on it.  In a suit by A. to foreclose his mortgage, *Held*,

(1) That there was never any *actual merger* of the mortgage interest in the fee, the two interests having never met in the same person.

(2) That, if there would *necessarily* have been a merger in case the two interests had met in the same grantee, perhaps the trustees in the trust deed might have safely relied upon the record in the register's office, and could have dealt with the original mortgagee as the owner of the whole estate.

(3) That, in the view of *equity*, a mortgage interest does not necessarily merge in the fee when that is acquired by the mortgagee; but it will be held to have merged, or otherwise, according to the actual or presumed *intention* of such mortgagee.

(4) That, in this state of the law, the grantees in the trust deed, if they desired that deed to be unaffected by the mortgage, were bound to go beyond the record, and ascertain from other sources whether there had been a *merger in fact.*

(5) That the failure of the trustees to require their grantor to produce and deliver to them the mortgage and the note secured by it (or at least to produce the securities and discharge the mortgage of record), is sufficient to charge them with *laches.*

Aiken vs. The Milwaukee & St. Paul Railway Company, impleaded, etc.

2. Where mortgaged premises have been conveyed in parcels, at different times, by the mortgagor, the established equitable rule is, that on judgment of foreclosure the parcels shall be sold in the inverse order of alienation.

3. But, to authorize the court to determine at the trial the priorities of the owners of the equity of redemption, all parties interested should have due *notice* that their rights will then be determined.

4. No notice appearing to have been given the other defendants in this case by the appellant company, the court did not err in refusing at the trial to hear the testimony and determine priorities between the defendants.

5. On the application of any defendant interested, made upon proper notice before the sale (and possibly, in some very special cases, after sale and before confirmation thereof, within a reasonable time after judgment), the court should, by reference or otherwise, determine the respective rights of all parties in the mortgaged premises, and direct the sheriff to sell them in the proper order. And it may, if necessary, stay the sale to enable this to be done. And it seems that this is better practice than to permit defendants to litigate their respective priorities on a trial of plaintiff's cause of action, or before judgment thereon.

6. The appellant company alleges in its answer, that the S. & M. R. R. Co. (under which it claims) condemned and took the land in controversy under the power of eminent domain conferred by its charter; but there is no specific averment, or proof, that the land was ever *appraised*. *Held*, that there was no error in adjudging a sale of the mortgaged premises without any exception in favor of the appellant.

7. Sec. 21, ch. 119 of 1872, *authorizes* the court, in foreclosure of a mortgage of land to which a railroad company has acquired title subject to such mortgage, to appoint commissioners to appraise the land, and to stay proceedings against the company until the coming in of their report; and it contemplates that this report shall be made before judgment. But the company should apply to the court (on proper notice to all parties interested) for the appointment of such commissioners; and where this was not done, there was no error in rendering a judgment for the sale of the premises held by the company.

APPEAL from the Circuit Court for *Milwaukee* County.

This is an action to foreclose a mortgage on the N. W. ¼ of the S. E. ¼ of sec. 6, town 12 north, range 9 east, in Portage City, executed April 10, 1854, by the defendant Dunn and wife to the La Crosse & Milwaukee Railroad Company, and

registered in the proper office on the following day. The mortgage was given to secure the payment of a promissory note for $5,000 and interest, of even date therewith, made by the defendant Dunn, and payable to said railroad company or order. On the 11th of October, 1854, the railroad company indorsed the note, and sold and delivered the note and mortgage to Washburn, Pond & Co., who purchased the same in good faith and paid a valuable consideration therefor. Before this action was commenced, the plaintiff became the owner of such note and mortgage in the usual course of business, and paid value therefor. No assignment or transfer of the mortgage was ever recorded in the office of the register of deeds.

On the 1st of June, 1854, Dunn and wife conveyed an undivided one-fourth of the mortgaged premises to Henry W. Tenney, and another undivided one-fourth thereof to Harrison S. Haskell; and in July following, Dunn, Tenney and Haskell platted said premises into blocks and lots, and acknowledged and recorded the plat thereof pursuant to the statute. During the years 1855 and 1856, Dunn, Tenney and Haskell, by deeds duly executed and recorded, for valuable considerations, conveyed to the La Crosse & Milwaukee Railroad Company several of the blocks and lots (part and parcel of the mortgaged premises) included in such plat; and that company, and after it the appellant, have ever since been in possession of such blocks and lots, and have erected valuable improvements thereon, exceeding $20,000 in value. The La Crosse & Milwaukee Company located and built its railway over and upon such blocks and lots, and the same has ever since been operated thereon.

On the 31st of December, 1856, the La Crosse & Milwaukee Railroad Company executed to trustees a mortgage or trust deed (containing covenants to pay liens or charges) on a large quantity of property, including the blocks and lots conveyed to it by Dunn, Tenney and Haskell as aforesaid, to secure the payment of its bonds to the amount of $4,000,000, thereafter

to be issued, and which were thereafter issued and negotiated by that company. This mortgage or trust deed was afterwards duly foreclosed, and all of the premises and property mortgaged or conveyed thereby were sold under the decree of foreclosure, and, in 1863, were conveyed for value to Pratt and White, the purchasers at such sale. In the same year Pratt and White, for a valuable consideration, sold and conveyed all of the property so purchased by them to the appellant, the *Milwaukee & St. Paul Railway Company.* All of the above mentioned conveyances were duly registered at or about the time they were executed.

The foregoing facts appear from the pleadings and evidence, and from those findings of fact to which no exception was taken.

It is alleged in the answer of the appellant, that, after the execution of the mortgage in suit, Dunn, Haskell and Tenney sold and conveyed all or nearly all of the mortgaged premises to various persons, and that the blocks and lots of the appellant were first so sold and conveyed; and the appellant demands that the premises (if sold) shall be sold in the inverse order of such conveyances thereof. One other defendant makes a similar demand. There are nearly one hundred defendants in the action, a large number of whom have failed to interpose answers. On the trial of the case, the appellant called a witness and offered to prove by him " the successive alienations of the several lots into which the mortgaged premises were subdivided, and the times of such alienations." On plaintiff's objection, the testimony was excluded.

Judgment was rendered in the usual form for the foreclosure of the mortgage against all of the defendants, and for the sale of the forty-acre tract described in the mortgage, or so much thereof as may be necessary to raise the amount due to the plaintiff, etc. No directions as to the order of sale are contained therein.

The *Milwaukee & St. Paul Railway Company* alone appealed from the judgment.

*John W. Cary*, of counsel for appellant, argued : I. The *Mil-waukee & St. Paul Railway Company* is a subsequent purchaser in good faith, without notice of the plaintiff's rights.   The as-signee of a mortgage is a "purchaser" within the meaning of the recording act.  R. S. 1849, ch. 59, sec. 29.   Section 30 makes the assignment of a mortgage a conveyance, and there-fore the plaintiff or his grantor was a purchaser of an interest in real estate within the meaning of section 24, and his assign-ment was required to be recorded to be of avail against a sub-sequent purchaser for value without notice.   Counsel com-mented on the case of *Purdy v. Huntington*, 42 N. Y., 334, as not decisive of the question in this suit, as it was decided on facts which are not in this case : 1. The record did not show that Minot Mitchell, Huntington's grantor, had title to the premises, as his deed was not recorded.   2. If the deed of Minot Mitchell, in whom it was claimed the two estates met, conveyed the mortgaged estate to Huntington, then his convey-ance should have been recorded as a mortgage instead of a deed, and, as it was not so recorded until after the assignment was recorded, he was not protected by the statute, as his deed was not first recorded.   In the case at bar, our grantor's deed was on record when he purchased, and by the record both estates had met in him, and the conveyance to our grantor, the trust deed, was recorded as a mortgage and not a deed.   Bron-son, Soutter and Knapp, Pratt and White, and the defendant, the *Milwaukee & St. Paul Company*, were all subsequent pur-chasers as defined by sec. 29 of the recording act then in force. R. S. 1849, ch. 59.   The La Crosse company conveyed to Bronson, Soutter and Knapp a mortgage estate upon all the estate the mortgagor had in the premises, which the record then showed to be the entire estate.   The record shows such estate, the mortgage and the equity of redemption united in the mort-gagee, and his full covenant, warranty or trust deed conveyed to a subsequent purchaser in good faith for valuable considera-tion not only all the estate he had, but all which he appeared

to have by the record. This result follows whether we regard the mortgage estate merged in the equity of redemption, or regard the mortgagee as holding the two estates at the same time and intending to keep them separate. The decision in *Purdy v. Huntington*, that the record of the mortgage was notice in whosesoever hands it might be, and that the record of the assignment was not necessary to its validity, nor as a protection against a purchaser of the property mortgaged, nor any other person, than a subsequent purchaser of the mortgage itself, and that the vendee of the premises took subject to the lien of the mortgage irrespective of ownership, would be correct, provided the vendee took from a person whom he had no right to suppose was the holder of the mortgage, but not otherwise.

2. The mortgage estate and equity of redemption, as to purchasers from the La Crosse company in good faith, did merge in the hands of that company, however it might have been as between said company and its assignee. *James v. Mowry*, 2 Cow., 246, and as to a *bona fide* purchaser this question must be decided by the record, which here showed a merger. 3. The judgment was erroneous for the reason that it did not direct sale in parcels in inverse order of alienation. *Ogden v. Glidden*, 9 Wis., 46; *Bassett v. McDonnell*, 13 id., 444; *State v. Throup*, 15 id., 314; *State v. Titus*, 17 id., 241; *Warren v. Foreman*, 19 id., 35. 4. No judgment of foreclosure and sale should have been rendered against appellant, but commissioners should have been appointed and proceedings stayed until their report. Ch. 119, Laws 1872, sec. 21.

*Mariner, Smith & Ordway*, for respondent, contended: 1. That, as the mortgage in suit was assigned by the La Crosse Company before the conveyance by Dunn, Haskell and Tenney to said company of the lots for right of way and depot purposes, there was never in fact a merger, as both estates did not unite at the same time in the same person. 4 Kent Com., § 101; *Cliff v. White*, 12 N. Y., 519; *Evans v. Kimbal*, 1 Allen, 240; *Edgerton v. Young*, 43 Ill., 465; *James v. Mowry*, 2 Cow.,

284; *Campbell v. Vedder*, 3 Keyes, 178 ; *Purdy v. Huntington*, 42 N. Y., 334. The St. Paul Company, the appellant, derived no greater title through the foreclosure of the trust deed than they could have derived from a warranty deed. Had the La Crosse company deeded by warranty deed with covenants of warranty, the grantees would, nevertheless, have taken subject to the mortgage in suit, because, although the record showed a state of facts from which a merger might arise, yet it did not necessarily follow that a merger had taken place, as merger is matter of intent where estates do meet in the same person. The grantees in the trust deed, finding the record showing such facts, were bound to inquire whether or not a merger was intended, but *did not.* Inquiry would have revealed the fact, and they should be held to have knowledge of all they might have learned by inquiry. The St. Paul company are in the same situation; nor does the recording act aid them, as it is only a purchaser of the *same* estate, whose conveyance is first duly recorded, who takes precedence. R. S., 1858, ch. 86, sec. 25, and cases before cited. The mortgage in suit being on record was constructive notice of its existence to the trustees, and purchasers of bonds secured by the trust deed, and they were chargeable with notice that it was such an incumbrance in the hands of any one to whom legally transferred, and the record of its transfer was not necessary to its validity, nor as a protection against a purchaser of the *mortgaged property*, or any person but a subsequent *bona fide* purchaser of the *mortgage itself* and the debt secured thereby, but a grantee of the premises took subject to the *lien*, irrespective of the ownership. 2. It does not appear from their answer that the St. Paul company have yet proceeded under their charter, or any other law to obtain an appraisement. The court cannot grant the relief sought until that is done. Nothing in the record shows that the appellant ever asked for the appointment of commissioners, or that the court ever refused to make it. *Kennedy v. M. & St. P. R'y Co.*, 22 Wis., 582. 3. The question as to the order of

sale is not within the issue for trial in this action. The plaintiff should not be embarrassed thereby. It is only where there is no dispute that the court will settle equities between different defendants. *Ogden v. Glidden,* 9 Wis., 46. In addition to the cases passing upon this question in this court, they cited *Ins. Co. v. Van Rensselaer,* 4 Paige, 85; *Farmers' L. & T. v. Seymour,* 9 id., 545; *Renwick v. Macomb,* 1 Hopkins Ch., 277; *Tower v. White,* 10 Paige, 397; *Cullum v. Erwin,* 4 Ala., 452; *Hugh v. Edwards,* 9 Wheat., 489; *Snyder v. Stafford,* 11 Paige, 76; *Smart v. Bement,* 3 Keyes, 253; *Ray v. Whittaker,* 44 N. Y., 565. There is now no way of framing an issue between codefendants. Formerly it was by cross bill, which is abolished by the code. 1 Van Santvoord Eq. Practice, 224; *Am. Bible Society v. Stark,* 45 How. Pr., 164.

Lyon, J. When the trust deed, through which the appellant makes its title to the premises in controversy, was executed and registered, no assignment of the mortgage executed by Dunn and wife to the La Crosse & Milwaukee Railroad Company had been recorded in the office of the register of deeds, and it does not appear that the trustees named in such deed had any actual notice that such mortgage had been assigned. Upon these facts, it is maintained that the appellant took its title to the mortgaged premises divested of the lien and incumbrance of the mortgage; and the registry laws and the doctrine of merger are invoked by the learned counsel for the appellant to sustain the position.

For the purposes of this case, it will be assumed that the execution and registry of the trust deed, and the subsequent proceedings thereon, vested the same title in the appellant that would have vested in it (had it then been in existence) by an absolute conveyance to it from the La Crosse & Milwaukee Railroad Company of the mortgaged premises, executed and registered at the same time, and containing the same covenants as to title, as the trust deed.

The La Crosse Company, the mortgagee, assigned the plaintiff's mortgage for value long before it took a conveyance of the land in controversy from Dunn, Tenney and Haskell. Hence the two estates, the fee and the mortgage interest, never met in the same grantee, and for that reason, if for no other, the mortgage interest did not merge in the fee. This will more fully appear when we come to consider, as we presently shall, the doctrine of merger.

Were the proposition a correct one, that, had the two estates met in the same grantee, the mortgage interest would necessarily have merged in the fee, it might follow that the trustees named in the trust deed could have safely relied upon the record in the register's office, and could have dealt with the La Crosse company as the owner of the mortgage interest, as well as of the equity of redemption, that is, as the owner of the whole estate. In this view of the case the question becomes material, whether, had the two estates so met, the mortgage interest would necessarily have merged in the fee; and this leads us to consider a little more fully the doctrine of merger.

Blackstone says that, "whenever a greater estate and a less coincide and meet in one and the same person, without any intermediate estate, the less is immediately annihilated; or, in the law phrase, it is said to be *merged*, that is, sunk or drowned in the greater." Com., Book II, p. 177. Commenting upon this rule, in *James v. Morey*, 2 Cow., 246, SUTHERLAND, J., says: "The rule in equity is the same as at law, with this modification, that at law it is invariable and inflexible. In equity it is controlled by the express or implied intention of the party in whom the interests or estates unite" (p. 300). The learned judge cites several cases to support such distinction. Among these are *Compton v. Oxenden*, 2 Ves. Jr., 261, and *Forbes v. Moffatt*, 18 Ves., 384. In the latter case the Master of the Rolls, Sir WILLIAM GRANT, states the rule as follows: "It is very clear that a person, becoming entitled to an estate subject to a charge for his own benefit, may, if he chooses, at once

take the estate and keep up the charge. Upon this subject a court of equity is not guided by the rules of law. It will sometimes hold a charge extinguished where it would subsist at law; and sometimes preserve it where at law it would be merged. *The question is upon the intention, actual or presumed, of the person in whom the interests are united*" (p. 390). Prof. Washburn, in his treatise on the Law of Real Property, lays down a similar rule, as do many of the cases cited in the briefs of counsel. The rule was also recognized by this court in the late case of *Morgan v. Hammett*, 34 Wis., 512. It must be held, therefore, that, had the La Crosse company owned the mortgage interest when it executed the trust deed, still that interest would not *necessarily* have merged in the fee.

Such being the law, it seems very clear that it was the duty of the trustees, if they desired that the trust deed should be unaffected by the plaintiff's mortgage, to go beyond the record in the register's office (for such record was notice to them of the mortgage), and to ascertain from other sources whether there had been a merger in fact. They should have required their grantor (if it could) to produce the mortgage and the note which it was given to secure, and deliver them up, or, at least, to produce the securities and discharge the mortgage of record. The inability of the grantor to do so would be sufficient to charge the trustees with notice that the securities had been assigned, and the failure to call upon the grantor to do so is sufficient to charge them with *laches*.

Briefly stated, the case seems to be this: When the trust deed was executed, under which the appellant makes its title to the land in controversy, the plaintiff's mortgage was of record in the proper office, and the trustees had, at least, constructive notice of its existence. There was nothing of record to show that the debt which it was given to secure had been paid, and nothing which could affect the mortgage, except the registry of the conveyance to the mortgagee of the equity of redemption. The record did not show whether such convey-

ance operated as a merger of the mortgage interest in the land, or otherwise. Further investigation was necessary to determine that fact; and the means of determining it were at hand. The trustees failed to push their inquiries beyond the registry. They failed to ascertain (as they easily might have done) whether the two estates were, in fact, united in their grantor, and, if so, whether the latter elected to preserve the mortgage interest. Using no diligence in that behalf, they took their conveyance at their peril of the fact. It turns out that there has been no merger; that the mortgage interest is still subsisting, and, because of priority of execution and registry, such interest is paramount to that of the appellant in the mortgaged premises. These views are fully sustained by the cases cited on behalf of the plaintiff, particularly by the case of *Purdy v. Huntington*, 42 N. Y., 334, and the cases there cited.

II. It is further argued by the learned counsel for the appellant, that the court erred in rejecting the testimony offered to show the order in which the mortgaged premises were conveyed by the mortgagor, and in failing to direct in the judgment that the same be sold in the inverse order of alienation.

The established equitable rule, one which has been applied by this court in numerous cases, is, that where the mortgaged premises have been conveyed in parcels at different times, by the mortgagor, on judgment of foreclosure, the parcels shall be sold in the inverse order of alienation. But, to authorize the court to determine at the trial the rights and priorities of the owners of the equity of redemption, all parties interested should have due notice that those rights will then be determined. What will be sufficient notice is not here determined. The record in this case fails to show that any such notice was given; and manifestly the defendants, other than the appellant, are none of them chargeable with constructive notice that their equities in the mortgaged premises, as between them and the appellant, were to be litigated and determined on the trial.

We think, therefore, that the court did not err in refusing at the trial to hear the testimony and determine the priority of right in the equity of redemption.

But we think also that on the application of any defendant interested therein, made upon proper notice before the sale, and possibly, in some very special cases, after sale and before confirmation thereof, and within a reasonable time after judgment, the court should, by reference or otherwise, determine the respective rights of all parties in the mortgaged premises, and direct the sheriff to sell the same in the proper order; and the court may, if necessary, stay such sale for a reasonable time to enable it to do so. Indeed, we think this the better practice; for, usually, the plaintiff has no interest whatever in the matter, and, as a general rule, he ought to be allowed to establish his case at the trial (if he can), without being embarrassed and delayed by a contest between the defendants in which he has no concern. Besides, if the priorities of the defendants be litigated in a proceeding subsequent to judgment, the court can better protect the plaintiff from the costs of a litigation in which he has no interest.

If these views are correct, it follows that, in a proper case, it rests in the sound discretion of the court to hear and determine on the trial the respective rights of the defendants in the equity of redemption, and to direct in the foreclosure judgment the order in which the mortgaged premises shall be sold, or to postpone such hearing and determination until after judgment, under the conditions and restrictions above indicated. Here the court chose the latter course; and, even had the proper notices been given, we could scarcely say that there was an abuse of discretion. Moreover, an omission in a judgment, which can be supplied by a convenient proceeding after judgment, in the court which rendered it, ought not to work a reversal; and this for the reason that no one is necessarily injured by such omission.

III. The answer of the appellant alleges in a very general

way that the La Crosse & Milwaukee Railroad Company (through which it claims) took and condemned the lands in controversy, under the power of eminent domain conferred upon that company by its charter; but it contains no specific averment that the company proceeded under its charter to obtain an appraisement of the lands so taken. The record is entirely destitute of proof that any such appraisement was ever made. In the absence of such proof, the judgment properly provided for a sale of so much of the mortgaged premises as should be necessary to pay the mortgage debt, making no exception in favor of the appellant. *Kennedy v. The Mil. & St. P. R'y Co.,* 22 Wis., 581.

But it is claimed that the judgment, so far as it affects the lands of the appellant, violates sec. 21, ch. 119, Laws of 1872. It is said that the court should have appointed commissioners to appraise the value of such lands, and stayed all proceedings against the appellant until the coming in of their report. The statute clearly contemplates that the appraisal under it shall be made before judgment. But it does not require that it shall be made at all events in each case. It only authorizes it to be done; and it is at the option of the railway company to avail itself of the benefit of the statute or not. So, in this case, if the appellant desired an appraisal, it should have applied to the court before judgment, on proper notice to all parties interested, for the appointment of commissioners. The record fails to show that any such application was made; and this is a perfect answer to the objection and argument founded on the statute.

*By the Court.* — The judgment of the circuit court is affirmed.