MICHAEL DUFFY *et ux.* *vs.* EDWARD D. McGUINESS *et als.*

A. owned certain lots of land subject to three recorded mortgages, two to B. and the third to C. A. sold one of these lots to D., who obtained for valuable consideration a quitclaim from B. B. afterwards sold the other lots under his mortgage powers without obtaining enough to satisfy his claims, and his mortgages remained undischarged. Subsequently C. sold under his mortgage the lot conveyed to D. by A., and this lot by mesne conveyances passed into the hands of E.

In equity proceedings brought by D. against C. and E.:

*Held*, that D. should be subrogated to B.'s mortgage lien to the extent of D.'s payment to B. for B.'s quitclaim.

*Held*, further, that to this extent D. had a lien on the lot in the hands of E.·

*Held*, further, that C. was an unnecessary party to the proceedings in equity.

A mortgage lien purchased by the owner of the equity of redemption will, in the absence of a contrary intention manifest to the court, be kept alive in equity for the purchaser's protection against an intervening incumbrance, and will not merge: the rule being the same whether the purchaser takes an assignment of the whole mortgage lien or a release or quitclaim of the mortgagee's interest in the estate held by the purchaser.

BILL IN EQUITY for an account, and to establish a lien. The facts as found by the court are stated in its opinion.

· *February* 11, 1882. DURFEE, C. J. Previously to December 18, 1875, Patrick and Mary Duke were the owners of six lots of land, lying in the city of Providence, which were subject to three mortgages, to wit: *first*, a mortgage to the Mechanics' Savings Bank, given April 11, 1871, to secure a note for $4,800; *second*, a mortgage to the Mechanics' Savings Bank, given June 22, 1875, to secure a note for $2,200; *third*, a mortgage to the defendant, Bernard McGuiness, given October 28, 1875, to secure a note for $125. These three mortgages were duly recorded. On December 18, 1875, the Dukes, having previously sold one of the six

lots to the complainants at public auction for $775, conveyed it to them by warranty deed. On the same day the Mechanics' Savings Bank gave the complainants a deed wherein it quitclaimed and released all its right, title, and interest as mortgagee in the lot to them. Their deeds were duly recorded. The Mechanics' Savings Bank released, as aforesaid, in consideration of $537.48, part of the purchase money for the lot, received by it from the complainants and applied in reduction of its mortgages. The complainants entered into possession, and paid taxes for three years. Soon afterward the Mechanics' Savings Bank sold the remaining five lots, under the power given in their first mortgage, and did not realize from the sale enough to pay both of its mortgages, neither of which has ever been formally cancelled or discharged. Afterwards the defendant, Bernard McGuiness, advertised the lot bought by the complainants for sale under his mortgage. The complainants, who bought in ignorance of the mortgage, then first learned of its existence. The advertisement, in consequence of some conference between McGuiness and the counsel for the complainants, was temporarily withdrawn. Subsequently, however, the advertisement was renewed, and the lot was sold at public auction under the McGuiness mortgage to one Michael Gormley, for $190, and conveyed to him by quitclaim deed January 8, 1880. On February 9, 1880, Gormley conveyed to one Giles M. Nichols for $500, in money and other land. On May 18, 1880, Nichols conveyed to the defendant, Edwin D. McGuiness, a son of Bernard, for other lots received in exchange. The complainants, who question the good faith of these conveyances, claim in their bill that they are entitled, under the quitclaim deed from the Mechanics' Savings Bank, to have by subrogation the benefit of the lien which the bank had on the lot by force of its mortgages, to at least the extent of what they paid the bank on account of them, and pray that the said lien may be enforced against the defendants.

It is well settled that, in equity, where a mortgage passes by assignment to a purchaser of the equity of redemption, the two estates will not merge, if it is for the interest of the purchaser to keep them distinct, for protection against an intervening incumbrance, unless it be very clear that merger was intended. *Knowles*

*v. Carpenter,* 8 R. I. 548, and cases there cited ; *Stantons* v. *Thompson,* 49 N. H. 272, 279 ; Jones on Mortgages, § 868. And the rule is the same where the purchaser pays the mortgage debt, or takes, as the purchaser here took, a deed of release or quitclaim of all the right, title, and interest of the mortgagee in the estate. Jones on Mortgages, §§ 858, 869 ; *Grover* v. *Thatcher,* 4 Gray, 526 ; *Hunt* v. *Hunt,* 14 Pick. 374, 383 ; *Wadsworth* v. *Williams,* 100 Mass. 126. And it matters not that the release covers only a portion of the mortgaged estate, except that in such a case it will only operate *pro tanto* in favor of the releasee. *Grover* v. *Thatcher,* 4 Gray, 526 ; *Wyman* v. *Hooper,* 2 Gray, 141. It follows that if Bernard McGuiness had continued to hold his mortgage he would now hold it, subject in equity to the prior mortgages, to the extent of the payment by the complainants for their release. And this would be perfectly just, since the complainants paid not for his benefit but their own ; and inasmuch as the other five lots did not sell for enough to satisfy the prior mortgages, he would be a gainer by the release even on these terms. The question is whether Edwin D. McGuiness, as grantee by mesne conveyances under the power contained in the mortgage to Bernard, holds the estate by any better title. We think he does not. He and his predecessors must be held to have known all that the record shows in relation to their title. They must therefore be held to have known of the mortgages to the Mechanics' Savings Bank, the conveyance to the complainants, and the subsequent release to them by the Mechanics' Savings Bank ; and knowing these things, and also the fact of the intervening mortgage to Bernard McGuiness, they must be held to have known that, *primâ facie* at least, the release did not work a merger or extinguishment of the prior mortgages, but that in equity they were still existent for the protection of the releasees to the extent of what they had paid on them. *Purdy* v. *Huntington,* 42 N. Y. 334 ; *Aiken* v. *The Milwaukee & St. Paul R. R. Co.* 37 Wis. 469. The defendant, Edwin D. McGuiness, contends that he cannot be held for more than a dollar, as that is the consideration expressed in the deed of release. We do not take that view. The defendant, being charged with knowledge that the mortgages were still existent in equity for the benefit of the complainants, must be taken

to have been put on inquiry to learn for what amount they were existent, and to have had notice of whatever the inquiry would have revealed. He cannot excuse himself on the ground that he was misled ; for, when the consideration purports to be one dollar, it is well known that it cannot be taken as true, and therefore instead of allaying, it ought rather to have stimulated, inquiry. Our conclusion is that the estate is still chargeable for the amount paid on the mortgages, with interest at the rate reserved in them, *Walker* v. *King*, 45 Vt. 525 ; and that the complainants are entitled to have the charge enforced, unless the defendant, Edwin D. McGuiness, will satisfy it.

In this view of the case Bernard McGuiness is an unnecessary party, and as to him the bill must be dismissed with costs.

*Decree accordingly.*

*Nathan W. Littlefield*, for complainants.

*George M. Carpenter, Jun., & Edwin D. McGuiness*, for respondents.