CARISCH, Respondent, vs. LUND, Appellant.

*March 7—April 3, 1928.*

*Estates: Merger of greater and lesser estates: When distinct estates preserved: Intermediate incumbrancers: Intent of parties: Evidence: Sufficiency: Appeal: Who may complain of terms of judgment.*

1. The general rule is that by a meeting of the greater and the lesser estate in the same person, there being no intermediate estate, the lesser estate thereby ceases to exist; but it is within the power of one holding both estates, and intending so to do, to still preserve them as separate and distinct estates. p. 492.

2. A mortgagor, to prevent a sale under foreclosure and to secure his note to a creditor other than the mortgagee, conveyed the property to the creditor subject to the mortgage, and a land contract for the sale of the property back to the mortgagor by the creditor was entered into, whereupon the latter satisfied the judgment of foreclosure. Thereafter the mortgagor and his wife assigned all their interest in such contract to a bank for the purpose of securing an indebtedness, and subsequently quitclaimed the property to S., who quitclaimed to a creditor who had the legal title, and the bank thereafter also quitclaimed the same property to him. *Held,* that there was no merger of the equitable and legal estates in the creditor so as to subject the premises to the lien of a judgment obtained by defendant against the mortgagor after the execution of the

land contract, it being to the interest of the creditor that the estates should not merge. p. 493.

3. In an action to clear the title to real estate from the lien of the judgment, the fact that the trial court was not justified in expressly declaring in the decree that the land contract between the creditor and the mortgagor was canceled, the mortgagor and his wife having theretofore conveyed and not being parties to the action, is not ground for complaint by the defendant. p. 493.

4. Neither could the defendant complain of the judgment on the ground that there was no proper claim or showing of default in the terms of the land contract between the parties, or on the ground that plaintiff had failed to give credit for money received, where the defendant, neither by pleading nor by proceedings on the trial, ever offered to pay or secure the payment of any amount that might be due plaintiff under the contract. p. 493.

APPEAL from a judgment of the circuit court for Pierce county: GEORGE THOMPSON, Circuit Judge. *Affirmed.*

The plaintiff *Carisch* commenced this action April 16, 1927, to clear the title to certain real estate from any claim of the defendant *Lund.* The trial was September 7, 1927. Plaintiff was awarded judgment October 4, 1927, and defendant appeals.

On August 15, 1924, certain real estate in said county, owned and occupied by H. O. Standish and wife, was subject to a mortgage of over $5,000, then in process of foreclosure. H. O. Standish was then also indebted to the plaintiff *E. B. Carisch* on a note for $2,500. Pursuant to the desire of *Carisch* and Standish to prevent a sale and to secure the said note of Standish to *Carisch,* an arrangement was made whereby Standish and wife gave a warranty deed (recorded October 10, 1924) of the real estate to *Carisch,* subject to the mortgage. A land contract was also executed and dated August 15th (recorded February 10, 1925) providing for the then payment of $1, the balance of $9,558.05 on or before five years with interest at six per cent. Thereupon the judgment of foreclosure which had been entered

December 3, 1923, was satisfied by *Carisch* paying to the judgment creditor $6,379.07 on December 4, 1924.

On February 6, 1925, just four days before the recording of the aforesaid land contract, Standish and wife assigned to the First National Bank of River Falls all their interest in such land contract for the purpose of securing a then indebtedness.

December 15, 1925, the defendant *Lund* obtained a judgment against H. O. Standish for $154.35, docketed December 17th.

On April 9, 1926, Standish and wife gave a quitclaim deed (recorded April 16th) of the property to one Smith. May 2d Smith gave a quitclaim deed to *Carisch,* and on May 18th the First National Bank also quitclaimed the same property to *Carisch.*

By letter of March 19, 1927, the attorneys for *Lund* demanded the payment of *Lund's* judgment on the stated ground that at the time of its entry Standish, holding the aforesaid land contract, thereby subjected the real estate to the lien of the judgment, and that such lien was second only to a $7,000 mortgage given by *Carisch* to another on December 9, 1924.

March 23d plaintiff's attorneys reply, taking the position that the *Lund* judgment could be a lien on nothing more than the interest acquired by Standish through the land contract, and that plaintiff was willing to deed the land to defendant *Lund* upon compliance by *Lund* with the terms of such contract, the money to be paid not later than April 1st.

In this action the complaint recited the facts as to the title of the plaintiff as owner in fee simple of the property in question on August 15, 1924; the making of the land contract with Standish, its terms and conditions; the subsequent possession by Standish; the requesting of the defendant *Lund* to perform the terms of said contract or to satisfy

his judgment; his refusal to do either, and demanded judgment that the defendant *Lund* be barred and foreclosed from any interest or title in said real estate.

The answer alleged, among other things, that the deed and land contract of August 17th aforesaid constituted in effect a mortgage for the security of the moneys then advanced by *Carisch* and previously owing to him, and that the equitable title thereunder became merged with the legal title the plaintiff acquired by reason of the quitclaims aforesaid, and demanded judgment of dismissal of the plaintiff's complaint and the establishing of the lien of defendant's judgment against the real estate.

The plaintiff realized some $800 to $900 on the sale of personal property of Standish covered by a chattel mortgage and received $400 in rent from the farm for 1926, and would have five to six hundred dollars more coming to him for 1927 rent.

The court found, among other things, that the *Lund* judgment by its docketing became a lien upon the interest in the premises then owned by Standish under said land contract; that Standish failed to perform the terms of said land contract as to the semi-annual payments of interest and of taxes; that plaintiff held the equitable and legal title with the intention that they be separate and distinct and should not merge.

The judgment decreed that the land contract be declared canceled and of no further effect; that *Lund* and those claiming under him be barred from any claim of right or title to the premises.

For the appellant there were briefs by *White & White* of River Falls, and oral argument by *Kenneth S. White*.

For the respondent there was a brief by *Knowles & Doolittle* of River Falls, and oral argument by *L. S. Doolittle*.

ESCHWEILER, J.    While defendant's answer in form, so far as its allegations of fact are concerned, seems to assert

only a defense against the plaintiff's claim for relief, yet in the prayer for judgment the affirmative relief is asked that the judgment of December, 1925, for $154.35 should be held to be a lien upon the real estate. Though not so conceded by the answer, yet it appears that such assertion of lien was made in recognition of the priority of a $7,000 mortgage given by plaintiff while he held the equitable title under the warranty deed to him from Standish. It is conceded that the warranty deed to *Carisch* and the land contract back to Standish on August 15, 1924, were but one transaction and amounted to a mortgage only.

Defendant's main contention is that the judgment for $154.35, upon being entered and docketed December 17, 1925, became a lien upon the interests Standish then had to this real estate; that through the deed and land contract *Carisch* held an equitable interest to the amount of the obligations then due him, and Standish remained the holder of the legal title; and that when plaintiff, in May, 1925, acquired the legal title through the two quitclaim deeds, one from Smith, to whom Standish and wife had quitclaimed, and one from the bank, to whom Standish had assigned his interest in the land contract, thereupon there was a merger of the lesser, or equitable, title in the greater, the fee or legal title, and that, the equitable title thus disappearing, plaintiff had left but a legal title, and that title subject to the lien of the judgment.

The general rule is not disputed, viz. that by a meeting in the same person of a greater and lesser estate, there being no intermediate estate, the lesser estate thereby ceases to exist. *Scheuer v. Chloupek,* 130 Wis. 72, 79, 109 N. W. 1035; *Gilchrist v. Foxen,* 95 Wis. 428, 440, 70 N. W. 585; *Scott v. Webster,* 44 Wis. 185, 193. This general rule, however, is by no means absolute or conclusive, for it is also established law that it is within the power of one so holding the two titles, and intending so to do, to still preserve them as separate and distinct estates if it be to his benefit, and to

thereby prevent some other incumbrance on the property theretofore subordinated to such lesser estate to step up, as it were, by the extinction of such lesser estate, if merger were had, and thus become superior to some interest existing through such lesser estate. *Bahrs v. Kottke,* 192 Wis. 642, 645, 212 N. W. 292; *Aiken v. M. & St. P. R. Co.* 37 Wis. 469, 477; *Morgan v. Hammett,* 34 Wis. 512, 524; *Webb v. Meloy,* 32 Wis. 319, 322.

While there was testimony by plaintiff indicating his intention to have such a merger, inasmuch as he speaks of his expecting that he would have an entire title, and from which testimony it is ably argued that a merger was accomplished, yet it might well have appeared to the trial court hearing the testimony that plaintiff did not fully comprehend the questions asked of him and from other statements that he made on the trial, and it being so evidently to his advantage that he should not lose the priority by his claim under the land contract, we cannot now disturb the conclusion of the trial court that there was no merger.

While perhaps the trial court was not justified in expressly declaring that the land contract of August 17, 1924, between plaintiff and Standish was to be deemed canceled and of no further effect, the Standishes not being parties to this action, yet the defendant *Lund* manifestly cannot complain of such provision in the judgment, it becoming immaterial, so far as the Standishes are concerned, they having theretofore conveyed all their interest. Neither is the defendant *Lund* entitled to attack this judgment as being inequitable on the grounds, as he now asserts, that there was no proper claim for or showing of default in the terms of the land contract by Standish, it not being due according to its terms at the time of the trial, and especially so by reason of plaintiff's failing to give credit for the money he had received from the chattel-mortgage sale and the rents, and that therefore the present claim for such cancellation should be deemed premature. The defendant, however, is now in no position

to so claim, he having at no time, either by pleading or by proceedings on the trial, requested that there should be any accounting or ever offered to pay or secure the payment of any amount that might be equitably due the plaintiff pursuant to the land contract.

The result of the judgment below, which in effect bars defendant *Lund* from any title or interest in the land, was right and must be affirmed.

· *By the Court.*—Judgment affirmed.