MILLICENT L. PURDY, Administratrix, &c., of BENJAMIN H. PURDY, deceased, Appellant, *v.* CALVIN HUNTINGTON, impleaded with JOSEPH S. MITCHELL and another, Respondent.

The assignee of a recorded mortgage upon real estate, which real estate was conveyed by the mortgagor to the mortgagee, after the assignment, holds a valid lien thereon, as against a purchaser from such mortgagee, who purchases without knowledge of the assignment, although the conveyances, both *to* the mortgagee and *from* him to the purchaser, were recorded prior to the recording of the assignment.

The conveyance to the mortgagee, after assignment, is not a merger of the mortgage; nor can the conveyance by the mortgagee, although recorded before the recording of the assignment, operate as a transfer of the mortgage, so as to be deemed a subsequent assignment thereof, within the recording act.

J. gave a mortgage to M., which was duly recorded, and was assigned to the plaintiff with J.'s knowledge. J. afterward conveyed the land to M., who, three days before his deed was recorded, conveyed to the defendant. The defendant paid a valuable consideration, but did not examine the records, relying upon the representations of M., and had no actual knowledge of the mortgage or its assignment. His conveyance was recorded, as a deed, and subsequently the plaintiff's assignment was recorded.—*Held*, in an action to foreclose the mortgage, that it was a subsisting lien upon the land; and that the defendant was not entitled, under the recording acts, as a *bona fide* purchaser, whose conveyance was first recorded, to hold the premises discharged of the lien.

(Re-argument ordered December, 1869, and cause re-argued March 24th, 1870; decided June 21st, 1870.)

APPEAL from an order of the General Term of the Supreme Court in the seventh district, granting a new trial, and reversing a judgment in favor of the plaintiff's intestate, entered upon the report of Honorable Addison Gardiner, referee.

This action was brought to foreclose a mortgage given by Joseph S. Mitchell to Minott Mitchell and assigned by him to the plaintiff's intestate. The issues joined therein were referred for trial and decision to Addison Gardiner, from whose findings the following facts appear. The mortgage and a bond accompanying it bear date the 4th day of June, 1855, and were executed to secure the payment of the sum of $2,000 in three years from the date thereof, with interest thereon at the rate of seven per cent per annum, payable semi-annually, and they were assigned by an assignment in writing of the same date. The mortgage was recorded on the 28th day of the same month of June, but the assignment was not recorded till the 19th day of February, 1864. Both were recorded in the book of mortgages. In the intermediate time, and on the 10th day of July, 1858, Joseph S. Mitchell, the mortgagor, by a deed of that date, which was recorded on the 6th day of October, 1859, conveyed the mortgaged premises to Minott Mitchell, the mortgagee, who, on the 3d day of October, 1859, and previous to the record of the conveyance to himself, sold and conveyed the same by a deed of

that date containing a covenant of seizin and warranty, to the defendant, Calvin Huntington, who paid a good and valuable consideration therefor.

When the conveyance of Joseph S. Mitchell to Minott Mitchell was executed, both of them knew that the said bond and mortgage had been assigned and delivered to the plaintiff's intestate, and that they were then in his possession as valid and subsisting securities, and they were recognized as such by Minott Mitchell at the time of his conveyance to Huntington by an agreement, bearing even date therewith, entered into by and between him and the plaintiff's intestate, declaring the amount of principal then due thereon, and providing for an extension of the time for its payment by installments from time to time, and he continued to pay interest thereon until the time of his death in the spring of 1862; but Huntington had no actual knowledge or information of the existence or assignment of the said mortgage, or either of them, when he took his deed, and he had not made any search or examination of the records or caused any to be made with a view of ascertaining the state of the title to the property or whether there were any incumbrances thereon, nor had he made any inquiry, as to such incumbrances on the premises, of any one except the said Minott Mitchell, by whom he was informed that there were no incumbrances, and that the title was good, on which information he relied, believing the same to be true.

On these facts the referee directed the usual judgment of foreclosure and sale, which was reversed on appeal by the the General Term in the seventh judicial district. An order for a new trial was granted, and the case comes before this court on an appeal from that order, with the usual stipulation in case of affirmance for judgment absolute against the appellant.

*Samuel Hand*, for the appellant, insisted that the doctrine of merger had no application, as the mortgage interest and equity of redemption never met in the same person, citing *Campbell* v. *Vedder* (3 Keyes, 174).

Nor do the recording acts affect the plaintiff's rights. The mortgage being recorded, the omission to record the assignment does not affect his rights as against purchasers *of the premises.* "Subsequent purchasers in good faith" as to the mortgage, being purchasers of the mortgage, not of the premises. (*Campbell* v. *Vedder, supra ; Brown* v. *Blydenburgh,* 7 N. Y., 14; *Kellogg* v. *Smith,* 26 N. Y., 18.) If defendant can be regarded as having relied upon the doctrine of merger, he must still be charged with knowledge that it is never applied when it is the intention of the parties, or the interest of the person holding both titles that they should not merge. (*Kellogg* v. *Ames,* Ct. Appeals, December, 1869 ; *Bascom* v. *Smith,* 34 N. Y., 320 ; *Sheldon* v. *Edwards,* id., 279; *Champney* v. *Coope,* 32 N. Y., 543 ; *Warner* v. *Blakeman,* 4 Keyes, 487 ; *Forbes* v. *Moffatt,* 18 Ves., 384 ; *James* v. *Morey,* 2 Cow., 246; *Millspaugh* v. *McBride,* 7 Paige, 509; *Skeel* v. *Spraker,* 8 Paige, 182; *James* v. *Johnson,* 6 John. Ch., 417.)

By the records, when the defendant purchased, the title was in Joseph, and Minott, defendant's grantor, had nothing but a mortgage, the deed to him not having been recorded at that time; and, if the defendant's conveyance could be considered as an assignment of this mortgage, it was not duly recorded, being recorded *as a deed;* and therefore, as a mere question of the date of record, the plaintiff's assignment had priority.

*Noah Davis, Jr.,* for the respondent, cited *Fountain* v. *Pettee* (38 N. Y., 134) ; *Ely* v. *Schofield* (35 How., 330) ; 2 R. S., chap. 3, part 2, §§ 36, 37, 38, p. 171, 4th ed. ; Burrill's Law Dic., Chattels Real, § 41, p. 41 ; *Warner* v. *Winslow* (1 Sandf. Ch. R., 430); 11 Paige, 28, 37, 38 ; 2 Barb. Ch. R., 82 ; *James* v. *Johnson* (6 John. Ch., 417); S. C., 2 Cow., 246–296; *Clark* v. *Jenkins* (5 Pick., 280).

LOTT, J. It was claimed by the defendant, Calvin Huntington, in his answer and on the trial, that the mortgage in

question was merged in the conveyance from Joseph S. Mitchell, the mortgagor, to Minott Mitchell, the mortgagee, after its maturity, and was thereby discharged and ceased to be a lien, and if not so merged then, that he was to be protected as a *bona fide* purchaser of the mortgaged premises without notice of the assignment of the mortgage to the plaintiff's intestate, and that it was discharged by the delivery of the deed thereof from Minott Mitchell to him. Neither of those positions is sound. It is clear that there was no such merger. When the premises were conveyed by Joseph to Minott Mitchell, the mortgage had been assigned to the plaintiff's intestate and was then held by him, and the fact of such assignment was known by both of the parties to that conveyance, and it was the intention of both that the lien of the mortgage should continue. The necessary elements to constitute a merger were therefore wanting. The interests of the mortgagee and owner were not united in Minott Mitchell. Without such union, there could be no merger.

The question is then presented, whether Calvin Huntington can be protected in his title as against the mortgage by reason of the omission to have the assignment thereof recorded.

It is conceded that he is to be charged with constructive notice of the existence of the mortgage, and of the continuance of its lien, by its record in the proper office. By that he was informed not only of the date of the mortgage, the amount secured thereby, and of all its particulars, but that it was open and uncanceled of record, and therefore apparently an outstanding lien and incumbrance on the premises of which he was taking title. Having that information, he knew or was at least chargeable in law with the further notice, that it was such lien and incumbrance in the hands of any person to whom it had been legally transferred, and that the record of such transfer was not necessary to its validity, nor as a protection against a purchaser of the property mortgaged or any other person than a subsequent purchaser in good faith of the mortgage itself or the bond or

debt secured thereby; but on the contrary, that a vendee of the premises took it subject to the lien of the mortgage irrespective of the ownership thereof. That knowledge and notice made it his duty in the exercise of proper diligence, to inquire whether Minott Mitchell, his vendor, was still the owner and holder of the mortgage, and his omission to make that inquiry deprives him of the protection of a *bona fide* purchaser. These principles are fully established by the decision of this court in *Brown* v. *Blydenburgh* (7 New York Rep., 141); *Kellogg* v. *Smith* (26 id., 18); *Gilligg* v. *Maas* (28 id., 191, &c.); and *Campbell* v. *Vedder* (3 Keyes, 174). See also *Raynor* v. *Wilson* (6 Hill Rep., 469); *Read* v. *Marble* (10 Paige Ch. Rep., 409); and *New York Life Ins. & Trust Co.* (2 Barb. Ch. Rep., 82).

Having no actual knowledge of the existence of the mortgage, and having, by his neglect to examine the records, failed to obtain the notice which they would have given him, he incapacitated himself from making specific inquiries in relation to it, and, as was well said by the learned referee, in his well considered and able opinion, " he cannot now insist that the plaintiff's security should be set aside in his favor. If, by the neglect of the plaintiff to record his assignment, the parties are equally in fault, the plaintiff having the prior equity must prevail."

The General Term of the Supreme Court, if I correctly understand the opinion of the learned justice who delivered it, on the reversal of the judgment founded on the referee's decision, appear to have based that reversal on the ground that the records justified the conclusion and warranted Huntington, when he took his deed, in the assumption that Minott Mitchell had not parted with the mortgage and had taken the title in extinguishment of it. He says : " The referee correctly held that the rights of the defendant, Calvin Huntington, as a purchaser of the premises embraced in the mortgage previously assigned by his vendor to the plaintiff, are to be determined by the records in the clerk's office, and the facts fairly to be inferred from what was there stated."

He then assumes a very material fact, and on which his conclusion was principally if not entirely based, as appearing by those records when Huntington took his deed, which in reality did not appear. After referring to the circumstance disclosed by the evidence, as well as by those records, that Joseph S. Mitchell acquired his title to the premises from Minott Mitchell under a deed bearing even date (4th June, 1855) with the said mortgage, which he assumes, and as I concede to be fairly inferable, to have been given for a part of the purchase money, although the fact is not found by the referee, he says (and I deem it material to set forth the statement in full), that Huntington, by examination, " would have learned from said records that three years afterward, and five days after said bond and mortgage became due and payable (July 10th, 1858), that the said Joseph S. Mitchell reconveyed the said premises to the said Minott Mitchell for the same consideration expressed in the deed without covenants." He then adds : " The legitimate inference from those facts, which embrace all the information to be derived from the registry of deeds and mortgages in the county clerk's office of Monroe, where the land was situated, was, that the sale from Minott Mitchell to Joseph S. Mitchell was rescinded, and Minott took back his deed for the balance remaining unpaid of the original purchase money, and secured by said bond and mortgage, and repaid to Joseph S. the $1,000 of purchase money paid down on the purchase by the said Joseph. S. to the said Minott Mitchell. This is the conclusion that would be naturally drawn by the simple inspection of the records. The reconveyance of the land would be presumed to be in discharge and satisfaction of the mortgage, inasmuch as it did not appear that said mortgage had ever been assigned, no assignment of it appearing upon the records. The legal and equitable title therein appears to be united in Minott Mitchell. The mortgage, I think, from these facts would be presumed to be merged in the legal title and thus extinguished. Such, I think, would be the natural inference and language

Opinion of the Court, per LOTT, J.

of the records, and the interpretation which would ordinarily be put upon the facts therein and thereby disclosed."

It will be seen, from the statement of the learned judge, that he has assumed as a fact shown by the records, that the conveyance from Joseph to Minott Mitchell was recorded when Huntington made his purchase and took his title. In that, he was mistaken. It appears by the findings of the referee, and the fact is conceded by the learned justice, " that on the 10th day of July, 1858, the said Joseph S. Mitchell conveyed by deed to said Minott Mitchell the premises discribed in the mortgage above mentioned." It is then further found by him that this deed was recorded on the 6th day of October, 1859, and that finding is supported by the production of the deed in evidence by the defendant; and it also appears by such findings that on the 3d day of October, 1859, Minott Mitchell sold and conveyed the said mortgaged premises to the defendant, Calvin Huntington, by deed with covenant of warranty; and it is shown by the deed, also read in evidence by the defendant, that the deed was dated and acknowledged on the said 3d day of October, 1859, and was recorded in the book of deeds on the 9th day of January, 1862.

It thus appears, that the records, instead of showing the deed from Joseph to Minott Mitchell to have been recorded on the *third* day of October, 1859 (the day on which Huntington took his deed), as assumed by the learned justice in his opinion, did in fact show, that it was not recorded until the 6th day of October, 1859. The whole of the reasoning and argument, as well as the conclusion based on that assumption, must fall, when the foundation on which they rest is swept away.

It may, however, be urged that if Huntington had actual knowledge, or notice of the existence of the deed from Joseph to Minott Mitchell, it is better than the constructive notice with which he would have been chargeable from its record. Conceding that proposition to be true, it does not aid him. There is nothing to show that he had actual knowl-

edge or notice. The fact is not found by the referee. The fair inference deducible from his finding in connection with the evidence is to the contrary. All that is found by him, as to the actual knowledge or notice he had of the title, is that derived from Minott Mitchell, " by whom he was informed that there were no incumbrances, and that the title was good, on which declarations of his vendor the said Calvin relied and believed the same to be true ; " and he, on his own direct examination, testified, on being asked what representations were made by Minott Mitchell at the time he bought the property said : " I asked him if he knew the property to be free from incumbrances, and the title good ; he said it was ; when he handed me the deed, he said the title was as good as if it came from Uncle Sam. He said he had loaned money on the property about the year 1835 ; he foreclosed the mortgage, and got a chancery deed some several years after. I think in 1844. He gave me the master's deed ; he said he had owned it since then ; I never had any intimation, in any way, that there was any incumbrance on the property. I was in nego- tiation with him two or three weeks ; I talked about buying it ; I asked if the property was free from incumbrances, and the title good, and he said it was ; " and on being cross-exam- ined, he, after the statement of some collateral matters, but without having said anything further in reference to the purchase, than is above set forth, said : " I have said all that I recollect in relation to the purchase," and nothing else was afterward stated by him on that subject.

The information conveyed by that statement was, that the title he had was under that master's deed, given in 1844, and that he had continued to own it since that time, and nothing was communicated from which it could be understood or in any manner inferred that he had parted with the title to Joseph, and that he had subsequently received a reconveyance thereof from him.

There is, therefore, nothing to warrant the conclusion from any of the facts actually known to Huntington, or of which

he had constructive notice from the records, that the mort gage was merged in the legal title and satisfied.

It may be proper to consider the case in another aspect. Assuming that Minott Mitchell might, in the absence of actual notice of the assignment, be considered and treated as the owner and holder of the mortgage, and that the deed from him, as was suggested on the argument, would operate as an assignment thereof to Huntington (but which I by no means admit, and is contrary to what is said in *Wilson* v. *Troup* (2 Cowen, 230, &c., by·WOODWORTH, J.), the title of the plaintiff would nevertheless be superior to his. The deed was recorded in the book of *deeds*. That record was inoperative and ineffectual as the record of an assignment of the mortgage and conferred no rights as such on Hunting- ton as assignee. See 1 Rev. St., 756, §§ 2, 3, &c.; *Gilligg* v. *Maas, supra* (213 and 214); *Dey* v. *Dunham* (2 John. Ch. Rep., 188); *Dunham* v. *Dey*, S. C. in error (15 John. Rep., 155); *James* v. *Johnson & Morey* (6 John. Ch. Rep., 417, 432); *James* v. *Morey*, S. C. in error (2 Cowen Rep., particularly opinions of SAVAGE, Ch. J., 316); *White* v. *Moore* (1 Paige Ch. Rep., 551, &c.); *N. Y. Life Ins. and Trust Co.* v. *White* (17 N. Y., 469); *Brown* v. *Dean* (3 Wen- dell, 208).

Each of the parties, on that state of facts, would have held an unrecorded assignment, and that first given would prevail and have preference.

If the views above expressed are correct, the order of the General Term is erroneous, and should be reversed with costs, and that of the Special Term must be affirmed with costs.

SUTHERLAND, J. On the 4th of June, 1855, Minott Mit- chell being seized in fee of certain lands, sold and conveyed them to his son, Joseph S. Mitchell, who at the same time executed back to Minott Mitchell a bond in the penalty of $4,000, conditioned to pay to him $2,000, the purchase money, with interest, and a mortgage on the lands to secure the pay- ment of the bond.

Thereafter, but on the same day, Minott Mitchell by an assignment in writing under his hand and seal, valid and effectual as between the assignor and the assignee, assigned the bond and mortgage to Benjamin H. Purdy, the original plaintiff and the present plaintiff's intestate.

About three years after such assignment, and on the 10th day of July, 1858, Joseph S. Mitchell reconveyed the lands to Minott Mitchell. Subsequently, and on the 3d day of October, 1859, Minott Mitchell sold and conveyed, by a deed with covenant of seizin and warranty, the lands to the defendant and appellant, Calvin Huntington, for a valuable consideration paid therefor by said Huntington, who took such conveyance and paid such consideration without any actual notice or knowledge of the mortgage which had been so assigned to, and was then held by Benjamin H. Purdy, and without making or causing any search of the records, relying upon Minott Mitchell's representations that he had a good title, free from incumbrances:

The mortgage was duly recorded on the 28th of June, 1855. The deed, or reconveyance, from Joseph S. Mitchell to Minott, was duly recorded on the 6th of October, 1859. The deed to Calvin Huntington was duly recorded, the 9th of January, 1862. The assignment of the bond and mortgage to Benjamin H. Purdy was not recorded until the 19th day of February, 1864, on which day it was duly recorded. The question, and the only question in this case is, did Benjamin H. Purdy's mortgage become void, and he lose his mortgage, security, and lien, by neglecting to have his assignment recorded until after Calvin Huntington's deed had been recorded.

The question I have stated, as the only question in the case, is really nothing more or other, than a question as to the construction of certain portions or provisions of the recording act (1 Rev. Stat., 755 to 763), and all questions of good faith, of notice, &c., which have been, or may be, discussed or adverted to in this case, as incidental to the main question of construction, or otherwise, must come by or from

the recording act. Independent of the recording act, it would be wholly immaterial whether Huntington had or had not notice of Purdy's mortgage, or whether Minott Mitchell's deed to Huntington was voluntary, or for a valuable consideration.

Is this not too plain to require an illustration? A sells and conveys land to B. B gives back a bond and mortgage for the purchase money. A sells and assigns the bond and mortgage to C, and afterward receives a conveyance of the equity of redemption from B, and then by a full covenant deed, conveys the land, and all his estate and interest in the land to D.

Now, the conveyances, and the bond and mortgage, and their assignment, being left to their common law force and effect, does not D, irrespective of any recording act, necessarily take his conveyance subject to C's mortgage? *Could* A convey to D any more than the equity of redemption? Could his conveyance to D impair, or in any way affect C's mortgage debt, or mortgage security? Or is there, or can there be, independent of the recording act, as between C and D, any material question of good faith, or of notice, or even as to the consideration of D's conveyance? Is it, or can it be at all material as between C and D, irrespective of the recording act, whether D did or did not pay a valuable consideration for his conveyance, or whether he had, or had not notice of C's mortgage? Of course not. It is almost absurd to state these questions; and certainly, their statement furnishes their answers.

Nay further, no ingenious use of words, or plausible suppositions, or imperfect and deceptive analogies, can show, with the recording act in full force, and in view, that A's conveyance to D, did, or could, in fact, *of itself, or by itself*, carry, or convey anything but the equity of redemption, for he in fact, had nothing else to convey; and *it is even beyond* legislative power, however omnipotent, to enable a person to actually convey that which he has not. And, of course, A's deed to D did not, and could not, of itself or by itself, as

the act or deed of A merely, with, or without the recording act, operate as an assignment of C's bond, or mortgage, his mort gage debt, or mortgage security, lien or interest in the land.

Nay, still further, courts of law, as well as courts of equity, have for a long time viewed a mortgage, before foreclosure, as a mere security for the payment of the debt, and as only a chattel interest; the debt as the principal, and the mortgage and mortgage interest on the land as the mere incident or accessory. An assignment of the principal, the debt, carries with it the mortgage, the incident. The mortgage interest before foreclosure is assets in the hands of executors and administrators. The mortgage interest, before foreclosure, is not the subject of sale on execution at law. (Jackson v. Willard, 4 John., 41; Blanchard v. Colburn and Ux,. 16 Mass., 346.)

In Jackson v. Bronson (19 John., 325) it was held, that the mortgagor in fee could maintain ejectment against the grantee by deed in fee-simple of the mortgagee.

In Wilson v. Troup (2 Cowen, 195,) it was held, that the mortgagee, though he had conveyed the whole mortgaged premises with warranty in fee, could yet foreclose, for the reason that this conveyance of the land did not pass his interest in the mortgage; that a mortgage is the mere incident of the debt, and that an assignment of the mortgage interest in the land, without the debt, is a nullity. See also, Jackson v. Blodgett (5 Cowen, 206, 207).

In Jackson v. Willard (4 John., before cited), Ch. J. KENT said, that " the mortgage interest, as distinct from the debt, is not a fit subject of assignment;" that " it would be absurd in principle and oppressive in practice for the debt and mortgage to be separated and placed in different hands." In his commentaries (4 Com., 194, 5th ed.), he says: " The assignment of the interest of the mortgagee in the land, without an assignment of the debt, is considered to be without meaning or use. This is the general language of courts of law, as well as courts of equity; and the common sense of parties, the spirit of the mortgage contract, and the reason and policy of the thing, would seem to be with the doctrine."

The cases of *Jackson* v. *Bowen* (7 Cowen, 13, 20); *Robinson* v. *Ryan* (25 N. Y., 320), cited by Justice DANIELS in his opinion on a former argument of this case, are not inconsistent with this doctrine, because the decisions of those cases proceeded on the theory that the irregular foreclosure proceedings, &c., operated as an assignment of the mortgagee's debt and interest in the land, both. The head note in *Jackson* v. *Bowen*, says: "A conveyance by a mortgagee, as upon a statute foreclosure, under the power of sale in his mortgage, even if the proceedings to foreclose be irregular, yet carries all his interest as mortgagee to the purchaser, *as well in the debt as in the land.*"

The whole drift of the argument of Mr. Justice DANIELS in his opinion, and of the argument of the counsel for the respondent is, to show, that with the aid of the recording act, Minott Mitchell's deed to the respondent made him an assignee of Purdy's mortgage interest in the land, as distinct from Purdy's mortgage debt. It is not claimed or pretended, nor could it be, even with the aid of the recording act, that Purdy lost his mortgage debt by neglecting to have his assignment recorded; that *it* was either extinguished by the act, or otherwise transferred to the respondent.

Now having shown at length, perhaps inexcusably so, that Minott Mitchell's deed to Huntington did not, and could not, as his act and deed merely, without the aid of the recording act, make the respondent an assignee of Purdy's mortgage interest in the land for two reasons: 1st. Because he could not convey that which he had not; and 2d. Because the law would not have permitted him, if he had had Purdy's mortgage interest in the land, effectually to assign it as distinct and separate from the mortgage debt —Let us now turn to the recording act.

How does *it* operate as a protection or in aid of the subsequent purchaser, grantee, mortgagee or assignee, in good faith, for a valuable consideration, whose deed, mortgage or assignment is first recorded? By avoiding the prior deed, mortgage or assignment, the recording of which has been neg-

lected, as to such subsequent purchaser, &c. As to such subsequent purchaser, &c., whose deed, &c., has been first recorded, the *act* in effect transfers the estate or interest covered and actually conveyed by and held under such first unrecorded deed, mortgages, &c., *as of the time of the execution of his deed, mortgages, &c.*

If the act requires an assignment of a recorded mortgage to be recorded, as against a subsequent grantee 'in good faith and for a valuable consideration or ⏤e equity of redemption, whose conveyance shall first be recorded, then there is an end of this case in favor of the respondent. If it does not, but only requires such assignment to be recorded as against a subsequent assignee in good faith and for a valuable consideration of the mortgage, whose assignment shall first be recorded, then there is an end of the case in favor of the appellant.

I do not question the power of the legislature by the recording act to separate the mortgage interest in the land and transfer it to the subsequent assignee as a distinct thing from the mortgage debt, leaving the debt, as evidenced by the bond or other instrument, in the hands of the first assignee, to be enforced as he may be able to enforce it without the mortgage security.

Now, I think I have shown, but perhaps with inexcusable elaborateness, that the question whether Benjamin H. Purdy lost his mortgage, lien and security by neglecting to have his assignment recorded, is and must be entirely a question under the recording act, and that its decision wholly depends upon the decision of the question of construction, whether the act required him to record his assignment of the recorded mortgage as against Huntington, the subsequent grantee, of Purdy's assignor, who had in fact, and could convey nothing more than the equity of redemption.

This question of construction was decided by this court in *Campbell* v. *Vedder* (3 Keyes, 174), and I think rightly decided, in favor of the prior assignee of the recorded mortgage.

I do not think, that the report of this case justifies Justice

DANIEL's remark or suggestion in his opinion in this case on a former argument, that this question of construction was not in *Campbell* v. *Vedder.* Certainly the question, whether the recording act required the assignee of a recorded mortgage, to have his assignment recorded as against a subsequent mortgagee in good faith was in the case and decided.

It does not follow, because a court might have decided a case upon either of two or more grounds, that its decision is not authoritative, on the ground it was decided.

This question of construction was not in *Kellogg* v. *Smith* (26 N. Y., 18), because there, the question was between two assignees of the bond and mortgage. That case was decided on the ground that the second assignee was not an assignee in good faith; that the non-production of the bond and mortgage by his assignor, charged him with notice of the first and prior assignment, and of the delivery of the bond and mortgage to the first assignee.

This decision assumed, that the assignee of a mortgage, whether recorded or not, is required by the act to have his assignment recorded, as against a subsequent assignee in good faith and for a valuable consideration of the same mortgage, whose assignment was first recorded; otherwise the question of good faith would not have been a material question in the case.

This was expressly decided in *Vanderkemp* v. *Shelton* (11 Paige, 28). It was also assumed by Justice ALLEN in his dissenting opinion in *Kellogg* v. *Smith*, and by Justice PECKHAM in his opinion in *Campbell* v. *Vedder;* and I think it plainly follows from sections 1, 37 and 38 of the recording act.

The ingenuity and unsoundness of the argument of the counsel for the respondent in this case, consists mainly in this; that he starts by supposing that the respondent looked at the records, and saw the deeds and mortgages that were recorded, and then he tries, with the aid of the recording act, to make the respondent a subsequent assignee of the mortgage interest in the land distinct from the mortgage debt, and thus put him in a position in which he can claim the protection of the

recording act; whereas, in fact, the respondent did not look at the records, or know anything about them; and if he had searched the records and found the deeds and mortgages that were recorded, before he can invoke the protection of the act, or give any materiality to the question of fact or good faith, he must first, without any aid from the act, put himself in a position to claim its protection; that is, show that he is a subsequent assignor of the mortgage, or of the mortgage interest in the lands.

It is absurd to say, or to think, if the respondent had searched the records and found the deeds and mortgage that were recorded, and had supposed from them, that the mortgage, or mortgage interest in the lands, had been merged, that such inspection of the records and knowledge of the recorded deeds and mortgage, and erroneous supposition, could or would at all have affected the operation of Minott Mitchell's deed to him, or tended to show, that by that deed, he became the assignee of Benjamin H. Purdy's mortgage, or mortgage interest in the land.

I think the judgment of the Special Term was clearly right, and that the order of the General Term reversing it should be reversed.

All concur, except Grover, J., who was for affirmance, and Smith, J., who did not sit.

Order of the General Term reversed; judgment of foreclosure absolute for the plaintiff.