SAMUEL WEINBERGER

*v.*

ESTELLA BRUMBERG et al.

[Decided August 12th, 1905.]

In a suit to foreclose a first mortgage for $6,000 the defendant F., holding a third mortgage according to the record for $5,000, filed a cross-bill against the defendant H., who held, according to the record, a second mortgage for $9,000 to have his (F.'s) mortgage given priority over H.'s mortgage. The following facts were set forth in the cross-bill or were treated on the argument by both sides as appearing therefrom: F. had originally owned the land subject to the above-mentioned two mortgages for $6,000 and $9,000, respectively, the mortgage·debt of $9,000 being one for which he (F.) was personally liable on the bond. The record assignees of the $9,000 mortgage were the two daughters of the original mortgagee, their assignment having been kept off the record for a long time. In this situation of affairs F. conveyed the land to the record assignees of the $9,000 mortgage in full satisfaction of the same and took back a purchase-money mortgage for $5,000, and thereupon the new owners took possession and proceeded to collect the rents. The bond and mortgage for $9,000 were not produced at the time of this transaction, nor did F. call for them. The cross-bill did not allege that the record assignees were in any way pecuniarily responsible beyond whatever value might be placed upon their equity. The result of the transaction if valid was that F. changed his position so as to cease to be owner of the equity subject to $15,000 in possession of the rents, and to become the holder of a mortgage for $5,000 subject only to the first mortgage for $6,000, while his debt for $9,000 was paid. As a matter of fact, when this bargain was carried out the bond and mortgage for $9,000 were impounded in New York in a suit there pending brought by the trustee in bankruptcy of the mortgagee against the record assignees, in which suit a decree had already been made adjudging the assignment fraudulent and void as against the creditors of the mortgagee. After an appeal the bond and mortgage were sold at auction to the defendant H. No notice of any of these proceedings in New York was given to F., nor did he learn of them until long after he had carried out his contract with the record assignees and, permitted them to take possession, collect the rents and give a fourth mortgage on the property for $2,000. The cross-bill alleged most positively that F. acted in entire innocence and in good faith and without any notice of any fraudulent intent on the part of the record assignees.—*Held,* that the allegations of good faith and want of notice were not overcome or in any way nullified

by the suspicious circumstances set forth in the cross-bill; that F., in case he proved his cross-bill, which might be a difficult matter, would be entitled to affirmative relief against H., the exact nature and extent of which would be determined upon the final hearing; that the motion to dismiss the cross-bill must therefore be denied.

On motion to dismiss cross-bill.

*Mr. James P. Northrop,* for the motion.

*Mr. William W. Watson, contra.*

STEVENSON, V. C.

The cross-bill of the defendant Abraham Finkelstein is filed to have the mortgage for $5,000 held by him given priority over the mortgage for $9,000 held by the defendant Emmanuel Heilner. Heilner's mortgage bears date January 27th, 1900, and was recorded January 29th, 1900. Finkelstein's mortgage bears date September 26th, 1902, and was recorded on October 7th, 1902.

The facts set forth in the cross-bill upon which Finkelstein's claim of priority is based are as follows:

The defendant Finkelstein, on September 26th, 1902, was the owner of the mortgaged premises, which are situate in Passaic city, in this state. The premises were then subject to complainant's mortgage for $6,000, which is not called in question in this suit, and a second mortgage originally for $11,000, on which, however, only $9,000 remained unpaid, then held, according to the record, by the defendants Estella Brumberg and Grace Brumberg, but now held by the defendant Heilner. This mortgage for $9,000 had been originally given on January 27th, 1900, by the defendant Finkelstein and one Feder to the defendant Solomon J. Brumberg, the father of Estella and Grace, to secure a part of the purchase price of the conveyance of the property then made by Solomon J. Brumberg to Finkelstein and Feder. Subsequently Feder conveyed his interest to Finkelstein, who thereby became the sole owner, subject to the two mortgages above mentioned, on which $6,000 and $9,000 were due respectively. It is important to hold in mind while dealing

with the facts that this second mortgage for $9,000 secured the obligation of Finkelstein—that Finkelstein owed the amount of the mortgage to the lawful holders thereof. October 20th, 1900, the defendant Solomon J. Brumberg, by writing under his hand and seal bearing that date, assigned the mortgage for $9,000 to his daughters, the defendants Estella and Grace Brumberg, which assignment was recorded on June 5th, 1901. December 1st, 1901, the defendant Heilner and one Moses J. Wolf recovered a judgment in the supreme court of the State of New York against Solomon J. Brumberg, who then was and still is a resident of that state, for the sum of $6,418.74. December 19th, 1901, Moses J. Wolf was appointed trustee in bankruptcy in certain proceedings in the United States district court for the southern district of New York, in which Solomon J. Brumberg had been adjudged a bankrupt. Subsequently Moses J. Wolf, as trustee in bankruptcy, brought suit in the supreme court of the State of New York against Solomon J. Brumberg and his two daughters, Estella and Grace, to enjoin the transfer or collection of the mortgage for $9,000, and to obtain a decree that the assignment of said mortgage by Brumberg to his daughters was fraudulent and void, and that the mortgage belonged to the trustee. On May 8th, 1902, in lieu of the appointment of a receiver, the bond and mortgage were, by stipulation of the respective parties, deposited with the Trust Company of America, a banking corporation of the State of New York, "to be held by it in like manner as if it were the receiver in such cause."

July 9th, 1902, a final decree in the above-stated cause was rendered adjudging that the assignment from Brumberg to his daughters was made with intent to hinder, delay and defraud the assignor's creditors, and that the same should be set aside and declared void against certain creditors, including Heilner and Wolf, which decree was afterwards affirmed by the appellate division of the said supreme court.

November 10th, 1903, the bond and mortgage were sold at public auction pursuant to said decree, and were purchased by the defendant Heilner for $4,000, with full notice, however, of the rights and claims of the defendant Finkelstein.

The mortgage of the defendant Finkelstein dated September

26th, 1902, for $5,000, which he seeks to have made prior to his own mortgage for $9,000, was executed and delivered to him, according to the allegations of the cross-bill, under the following circumstances: At that time (September 26th, 1902) Finkelstein, as we have seen, was the sole owner of the premises which were subject to two mortgages, the second of which was his own mortgage for $9,000. This mortgage for $9,000, according to the record, was owned by the defendants Estella and Grace Brumberg, and had been owned by them for nearly two years, the assignment to them having been on record over one year. The bond and mortgage, however, were not in the possession of the apparent owners thereof, according to the record, because they had been first impounded in New York and then had been transferred to Wolf, as trustee in bankruptcy, by a decree in a cause which bound these defendants Estella and Grace Brumberg, such decree having been entered two months before the transaction with which we are now particularly concerned. In this situation of affairs the defendant Finkelstein, according to the allegations of the cross-bill, relying partly on the representations of Estella and Grace that they were owners and holders of the mortgage in question, and partly upon the fact that the records of Passaic county showed no assignment of the mortgage, conveyed the mortgaged premises to Estella and Grace in satisfaction of his (Finkelstein's) mortgage for $9,000 and took back the purchase-money mortgage for $5,000, which he now holds. The cross-bill alleges the absolute innocence of Finkelstein in this entire transaction and his entire want of notice of any of the proceedings in New York which resulted in the setting aside of the assignment from Solomon J. Brumberg to his daughters. The cross-bill alleges that he learned for the first time of these New York proceedings long after the consummation of his arrangements with Estella and Grace Brumberg above set forth. Whether the defendant received notice of the defect in the title of Estella and Grace Brumberg before they had put a fourth mortgage on the property to the defendant Isidor Bloch does not appear. The cross-bill, however, sets forth the belief of the defendant Finkelstein, founded on information which he received after his transaction with

Estella and Grace Brumberg, that these defendants obtained title to the premises from him and executed to him the mortgage for $5,000, which he holds "with the fraudulent intention of hindering, delaying and preventing the said Emmanuel Heilner and Moses J. Wolf from collecting their said judgment and for the further fraudulent purpose of evading the said decree of the New York supreme court," but further affirms that he carried out the transaction "innocently and without any knowledge of such intention or purpose on the part of the said Estella Brumberg and Grace Brumberg," and believing that Estella and Grace were as innocent as he was, and that he, the defendant Finkelstein, by the transaction obtained a mortgage second only to the mortgage of the complainant.

The notice of this motion does not specify any technical defects in the cross-bill as a pleading, or that the allegations of the cross-bill are inadequate to present the questions between these two defendants which have been argued. The notice claims that the cross-bill discloses no equity in favor of Finkelstein against Heilner, and does not show that there was a merger effected by the conveyance from Finkelstein to Estella and Grace Brumberg, and shows no facts under which Finkelstein's mortgage should be made prior to Heilner's mortgage. Adopting the views of both counsel who have argued this motion, I shall assume that the correct inference from the cross-bill is that Estella and Grace Brumberg, on September 6th, 1902, held under their assignment from their father not only the mortgage for $9,000, but the bond of Finkelstein which accompanied that mortgage and was secured by it, and that, according to the record, they therefore stood as the creditors of Finkelstein upon this bond and mortgage to the extent of $9,000.

My conclusion is that the motion to dismiss this cross-bill should be denied for reasons which I shall endeavor briefly to set forth.

The cross-bill sets up most positively that Finkelstein had no notice whatever that Estella and Grace Brumberg were not what the record showed them to be, the *bona fide* owners of the mortgage debt of Finkelstein for $9,000. It is a well-settled rule that

"the debtor or party liable on an assigned chose in action is not affected by the assignment until he has notice thereof, and consequently he may set up against the claims of the assignee any defence acquired before notice that would avail him against the assignor had there been no assignment. Thus payment by the debtor to the assignor or any compromise or release of the assigned claim by the latter before notice will be valid against the assignee and discharge the debtor." *2 Am. & Eng. Encyl. L.* (*2d ed.*) *1077, 1099.*

The qualification of this principle discussed in and applied to the case of *Terney* v. *Wilson, 45 N. J. Law* (*16 Vr.*) *282,* plainly has no application to this present case.

A large part of the argument on behalf of Heilner upon this motion ignores the fact that Finkelstein, in his transaction with Estella and Grace Brumberg, was contracting for the satisfaction of a debt which he (Finkelstein) had a right, under the allegations of the cross-bill, to suppose he still owed to them. The following cases were cited as sustaining the position of counsel for Heilner: *Purdy* v. *Huntington, 42 N. Y. 334; Curtis* v. *Moore, 152 N. Y. 159; Kamena* v. *Huelbig, 23 N. J. Eq.* (*8 C. E. Gr.*) *78; Harrison* v. *New Jersey Railroad and Transportation Co., 19 N. J. Eq.* (*4 C. E. Gr.*) *488.* In these cases the courts had to deal with purchasers of mortgages or purchasers of mortgaged premises who relied upon mergers or upon the apparent status of the party with whom they were contracting and from whom they were to receive either the mortgage or the land, as the owner of an outstanding bond and mortgage.

No authority has been presented to sustain the proposition that the obligor upon a bond secured by a mortgage may not safely bargain for the extinguishment or the partial payment of his debt without having the bond and mortgage actually produced. The authorities are the other way. The non-production of the bond and mortgage may or may not be a controlling circumstance in determining whether the obligor has acted in good faith. In the case of *Kamena* v. *Huelbig, supra,* Chancellor Zabriskie expressed the opinion that under the circumstances proved, one who purchased a bond and mortgage which had already been assigned as collateral received notice from the failure of the mortgagee to produce and deliver the bond and mortgage

that they were held ·by some other claimant. In that case we have a person pretending that he has bought and paid for goods which uniformly are forthwith delivered without even inquiring where they were. Manifestly the case has no bearing upon this present controversy.

In *Harrison* v. *New Jersey Railroad and Transportation Co., supra,* a party who purchased land from the mortgagor having notice of an uncanceled mortgage relied on the fact that the mortgage without the bond was in the possession of the mortgagor, and he accepted with his deed from the mortgagor this mortgage with the seals removed for cancellation, and thereupon procured the entry of satisfaction on the record. The mere statement of these leading facts makes any further discussion of the case unnecessary.

In *Purdy* v. *Huntington, supra,* the purchaser of mortgaged premises from the mortgagee, who in fact had assigned his mortgage, was not allowed the benefit of a merger. Plainly no merger in fact occurred, as the court found. The purchaser made no inquiry, and hence was denied the protection of a *bona fide* purchaser (at *p. 339*).

*Curtis* v. *Moore, supra,* followed *Purdy* v. *Huntington,* under a very similar state of facts. The rights passed on were those of a purchaser, not those of a debtor who has undertaken to pay his debt or to rearrange the terms of his obligation, contracting in good faith with his creditor after an assignment of the debt or obligation had been made, of which, however, he had no notice.

But it is quite unnecessary to discuss any of these cases in detail, because they do not touch the case presented by this cross-bill in any way whatever. We are not discussing the question what notice Finkelstein must be charged with as the purchaser of a bond and mortgage, or as the purchaser of land charged with a bond and mortgage if a merger has not in fact taken place. The sole question is, what notice must be imputed to Finkelstein. in making this bargain with Estella and Grace Brumberg, whom he supposed in good faith to be his creditors, which bargain involved the satisfaction of his debt.

The non-production of the bond and mortgage by Grace and

Estella Brumberg did not, in my opinion, amount to notice to Finkelstein that the bond and mortgage were held by some other claimant. This fact is simply one which must be considered in connection with others alleged in the cross-bill or which may be proved in the cause in determining whether the allegation of the cross-bill that Finkelstein had no notice and acted in entire innocence is true. It may be conceded that the cross-bill presents a suspicious case. There are other circumstances alleged which cast doubt upon the transaction under investigation. The bond and mortgage were transferred by a man to his two daughters. The assignment was kept off the record for a long period. The cross-bill does not allege that the obligation of these two women was worth anything. Finkelstein by his bargain canceled his indebtedness, amounting to $9,000, and exchanged his equity in the property encumbered by $15,000 for $5,000 worth of the equity in the same property when encumbered only by a mortgage of $6,000. But all these facts, taken together, in my judgment, do not of necessity conflict with the positive allegations of the cross-bill that Finkelstein in fact acted in good faith without any notice of the legal proceedings which had transferred the bond and mortgage from Estella and Grace Brumberg to their father's trustee in bankruptcy. The cross-bill stands alleging good faith and want of notice, and the issue thus presented must be tried, although the facts above mentioned may increase the difficulties of the defendant Finkelstein in establishing his contention.

A very little reflection will show that the non-production of the bond and mortgage is naturally and necessarily far less significant of an outstanding hostile title in cases where the mortgagor is contracting for the payment, compromise or readjustment of his debt than in cases where a stranger to the assignee is purchasing the mortgaged land or the mortgage itself. In the latter class of cases, to which the cases cited above all belong, the assignee may have no possible opportunity to give actual notice to the party who afterwards claims to have bought in ignorance of his rights. But in the former class of cases the assignee—the outstanding claimant—has ample opportunity to give such notice. The present case sharply illustrates this im-

portant distinction. The defendants Wolf and Heilner were grossly negligent in not giving notice to Finkelstein of their suit and claim against Brumberg and his daughters. The New York court enjoined the two daughters from transferring the bond and mortgage on March 4th, 1902, and yet Finkelstein was allowed to remain in ignorance of the fact that this litigation was going on. Apparently for nearly a year Messrs. Wolf and Heilner were endeavoring to sequestrate this debt of $9,000 owed by Finkelstein, while they did not take the trouble to give Finkelstein the usual notice not to pay his debt to the party who appeared to be his creditors. It would seem to require considerable hardihood for these men to complain of Finkelstein for bargaining for the payment of his debt without first calling for the production of the evidences of that debt after they had for so long a time practically concealed from Finkelstein the rights which Finkelstein's bargain affected.

It would, in my opinion, be very unwise to impose upon a mortgagor a rule requiring him to have the bond and mortgage produced before him every time he makes a payment or enters into a contract affecting the mortgage debt in order to protect some possible unknown holder of the bond and mortgage who has, by refraining from giving notice, concealed the fact that he had become entitled to receive the mortgage debt.

Where a party is buying the mortgage or buying the land it is incumbent upon him to make inquiries, and oftentimes, in respect of most important elements of the transaction, he buys at his peril. Where a mortgagor pays his debt he has no concern about the title to the land, nor does he concern himself about the apparent status of the mortgage on the record or otherwise so long as the fact of payment is established. Where the mortgagor conveys the land in payment of the mortgage debt, the deed may very properly recite that the conveyance effects such payment, and in such case the mortgage may be left uncanceled of record as a part of the title, while the bond, being dead in law, is disregarded.

I think that the correct conclusion is that if the defendant proves the allegations of his cross-bill he is entitled to have enforced, so far as is equitable, the rights which he obtained

by virtue of his contract with his creditors—the persons whom he honestly believed to be the holders of his obligation.

The nature and extent of the relief to which the defendant Finkelstein will be entitled in case he proves his cross-bill are matters left entirely open for determination upon the final hearing of the cause. It is enough for present purposes to reach the conclusion that in such case Finkelstein will be entitled to some affirmative relief as against Heilner.

Although it is not alleged that Finkelstein surrendered possession of the premises when he conveyed them to Estella and Grace Brumberg, I shall, in accordance with the arguments made on both sides of this motion, infer that fact from the allegations of the cross-bill. It is not specified in the notice of this motion, nor has it been claimed by counsel for Heilner on the argument, that such was not the case. It would seem that if Finkelstein is found to have made an honest bargain with his creditors for the satisfaction of his debt that he is entitled as against the actual holder of that debt by a concealed assignment who failed to notify him (Finkelstein) of his (the assignee's) rights to have the bargain enforced, at least so far as is necessary to secure complete indemnification. If Finkelstein's bond is good against him in the hands of Heilner, at least he (Finkelstein) would have an equitable right, it seems to me, in the case stated to have the rental value of the premises which he gave up deducted from the amount which Heilner has a right to recover from him (Finkelstein) or to collect out of the mortgaged premises before Finkelstein's mortgage is paid. In reliance upon the apparent situation Finkelstein has lost this rental value which otherwise would be in his pocket, and could be applied by him to the reduction of Heilner's claim.

Whether the contract between Finkelstein and Estella and Grace Brumberg must stand in equity as a *bona fide* payment of the $9,000 mortgage and a release of the land therefrom, so as to put Finkelstein's mortgage for $5,000 next to the first mortgage, as counsel for Finkelstein has strenuously insisted, will be left at present an entirely open question. The argument on behalf of Finkelstein is based partly upon general principles of law and equity relating to the rights of debtors to pay their

debts and to make bargains in relation to their debts without regard to the possibility of assignments of those debts of which they have no notice, and partly upon the provisions of our statute in regard to the recording of assignments of mortgages. *2 Gen. Stat. p. 2109 § 34.*

There is perhaps another possibility in regard to the character of the relief to which the defendant Finkelstein may be entitled. It may be that a state of facts will be established by the proofs which will raise the question whether the equity of Finkelstein to be recognized and enforced in this case is not to have the transactions which resulted in the exchange of his equity for a mortgage of $5,000 and the giving of a mortgage of $2,000 to the defendant Isidor Bloch entirely set aside upon terms and under conditions which will also indemnify Finkelstein against loss and place him in the same position which he occupied before these transactions took place.