ADELIA A. LEONARD

*v.*

THE LEONIA HEIGHTS LAND COMPANY.

[Submitted October 22d, 1912.  Decided October 30th, 1912.]

1. The act respecting conveyances, by section 54 (*2 Comp. Stat. 1910 p. 1553*), provides that every unrecorded instrument mentioned in section 21 of the act, which includes assignments of mortgages, shall be void as against subsequent *bona fide* purchasers, for value and without notice, whose deed is first recorded.—*Held*, that where a mortgagee assigned the mortgage and the assignment was not recorded, and subsequently acquired the equity of redemption and sold it for the full value of the land to a *bona fide* purchaser, representing that the mortgage was

lost, the purchaser on recording his deed got title discharged of the mortgage.

2. An act concerning mortgages (*3 Comp Stat. 1910 p. 3419 § 34*), providing that, when an assignment of a mortgage is not recorded, a release by the assignor to a person not having actual notice of the assignment shall be as valid as if the mortgage had not been assigned, is meant *to afford protection to the purchaser of the land itself who believes the mortgage to be lost, as well as purchasers of the mortgage.*

3. Evidence *held* to show that the purchaser of land acted in good faith and after all inquiry possible, in taking title relying on the vendor's assurance that a mortgage standing of record in the vendor's name had been lost, though in fact he had assigned it.

On bill to foreclose a mortgage, answer and proofs taken in open court.

*Mr. Louis A. Cowley* and *Mr. William W. Watson,* for the complainant.

*Mr. Frederick P. Schenck,* for the defendant, the Leonia Heights Land Company.

STEVENSON, V. C. (orally).

My conclusion is that the defendant, the Leonia Heights Land Company, is entitled to a decree dismissing the foreclosure bill, on the ground that the company is a *bona fide* purchaser for a valuable consideration without notice of the interest of the complainant which she acquired under her assignment, the assignment having been left unrecorded.

In another aspect of the case I think the conclusion is warranted that the defendant, the land company, is protected against the mortgage of the complainant under the thirty-fourth section of the act in relation to mortgages, which provides, in effect, that when an assignment of a mortgage is not recorded in accordance with the system provided for in the act, any payments made to the assignor in good faith and without actual notice of such assignment, and any release by the assignor of said mortgaged premises or any part thereof to a person not having actual notice of such assignment, shall be as valid as if the mortgage had not been assigned. The defence which I first referred to is founded

upon the fifty-fourth section of the act in relation to conveyances, which must be read in connection with section 21 of the same act.

We have here a purchaser of mortgaged premises who pays full value and takes a warranty deed from the owner. The owner had recently acquired the property. Before he had acquired the property he had taken the mortgage in question now held by the complainant. The owner then assigned the mortgage to the complainant for value and afterwards, a considerable time after he had thus parted with all interest in the mortgage, he acquired the equity of redemption. Thus, at the time of the transaction with which we have to deal, the Leonia Heights Land Company acquired, by warranty deed, the property in question from a person, one Ryan, who appeared on the record as the owner of the equity of redemption, and the owner of the bond and mortgage in case no merger had occurred. In case a merger had occurred, this man Ryan appeared on the record as the owner of the entire fee, free and clear. In fact, as between Ryan and the assignee of the mortgage, the complainant, Mrs. Leonard, there was no merger. Ryan sold the bond and mortgage to Mrs. Leonard before he acquired the equity of redemption, and when he acquired the equity of redemption as between himself and Mrs. Leonard he acquired it subject to the mortgage which she held.

As between these two parties no question of intention arises. There is no ground upon which any merger can be found to have been effected, but the question is, under the fifty-fourth section of the act respecting conveyances, does the defendant, the Leonia Heights Land Company, occupy the position of a subsequent *bona fide* purchaser for a valuable consideration, not having notice of Mrs. Leonard's assignment so as to get the protection provided by that section, which consists in making the assignment to Mrs. Leonard void as to it, the Leonia Heights Land Company?

The argument has been urged that the language of section 54 must be construed in some way distributively, and that the protection against an unrecorded assignment of a mortgage duly recorded, provided by that section, for a purchaser in the position of the Leonia Heights Land Company, is confined to a purchaser

of the mortgage. In other words, according to this argument, if a man had dealt with Mr. Ryan, supposing him to be what he appeared to be on the record, the owner of this bond and mortgage, and had bought the bond and mortgage for a valuable consideration, in good faith, without notice of the assignment made by Ryan to Mrs. Leonard, then that assignment would be void as against such purchaser of the mortgage. But it is insisted that no such protection is afforded to a purchaser of the land itself.

I am unable to adopt this view. Some cases have been cited from other states which are based on statutes which I think are somewhat different from ours but containing *dicta* which favor this view; but, in my judgment, the construction of section 54 and the policy of the enactment contained in that section are beyond doubt. Section 21 of our act respecting conveyances provides a means whereby all persons who acquire interests of a great many different kinds in real and personal property may have their instruments under which they acquire their interests acknowledged and recorded, and then they are safe, and all parties who deal with respect to the *res,* the subject-matter—the real estate in this case—are charged with notice of this outstanding interest. If a party acquires such an interest and ignores the provisions of the statute for his protection, then it is the intention of the act that his title shall be void as against all parties who subsequently acquire an interest in the subject-matter—in the *res*—which would be injuriously affected if the outstanding unrecorded title could be asserted and enforced. The only proviso is that the party subsequently acquiring his interest must pay a valuable consideration, act in good faith, and not have notice of the outstanding title. Any other construction, it seems to me, would defeat the perfectly plain purpose and policy of our statute.

According to this view the defendant, the Leonia Heights Land Company—if they acted in good faith and paid a valuable consideration and had no notice, about which matters I shall say something further on—had a right to deal with Mr. Ryan precisely as if the assignment to Mrs. Leonard was void. The statute makes that assignment void. It would perhaps be more accurate to say that the defendant, the Leonia Heights Land

Company, according to this view of the construction of the statute, did deal with Mr. Ryan with the advantage to them that this assignment was void, provided, of course, this company was a *bona fide* purchaser of the interest affected by the assignment of the mortgage for a valuable consideration and without notice.

I think also that there is another view of this case which gives the Leonia Heights Land Company the full benefit of section 34 of the act in relation to mortgages, which provides, in substance, that any payment made in good faith to the assignor without actual notice of the assignment and any release of the mortgaged premises, or any part thereof, to a party not having actual notice of the assignment, shall be as valid as if said mortgage had not been assigned.

Now, in fact, there was no merger, as we have seen, and for present purposes I am considering that the complainant's view is correct, and that the defendant, the Leonia Heights Land Company, under section 54 of the Conveyancing act, cannot be deemed to have purchased from Ryan the entire fee upon the theory of a merger. If, in transacting their business with Mr. Ryan when they acquired this property, the assignment to Mrs. Leonard must be deemed void under this section 54, then there was a merger as between the Leonia Heights Land Company and Mrs. Leonard.

But now I am supposing that we lay aside that view and for a time adopt the other view, that there was no merger as between the Leonia Heights Land Company and Mrs. Leonard, the holder of the outstanding unrecorded assignment. We have, then, this case: The Leonia Heights Land Company is making a deal plainly for Mr. Ryan's entire interest, whatever that was. It may be that the president of the company thought that there was a merger, and thought that when he paid the full value and took a warranty deed from Mr. Ryan he was acquiring the land free and clear of all encumbrances from a party who held the land in that way, from a party who held the entire fee, the mortgage having merged in the equity of redemption. I say the president may have thought he was doing that, but if, in fact, there was no merger as between his company and Mrs. Leonard, then the mortgage was outstanding against the property, and what the Leonia

Heights Land Company in fact did, was to pay full value for both interests, the value of the equity of redemption and the value of the outstanding mortgage unmerged.

Now, then, in my judgment, Mr. Ryan accepted the full value of the whole fee, the mortgages and stock or whatever the Leonia Heights Land Company turned over to him in payment of his entire apparent interest, including this mortgage interest. He knew that he had no right to undertake to transfer the whole interest, the equity of redemption and mortgage interest, to the Leonia Heights Land Company. He knew that they were paying a part, if not the whole, of what they paid to him as the price— not of the equity of redemption but of the mortgage interest which, in fact, was held by Mrs. Leonard.

This transaction, therefore, on the theory that there was no merger, on the theory that the mortgage interest was outstanding in Mrs. Leonard, effected, in substance, in equity a payment made by the company to Mr. Ryan, who the company supposed held the entire interest in the property, as I have said, including the mortgage interest which, in fact, was held by Mrs. Leonard.

Now, then, the last question is whether, within the meaning of these two statutes, section 34 of the Mortgage act, and particularly section 54 of the act respecting conveyances, the Leonia Heights Land Company is to be deemed to be, or to have been, a subsequent *bona fide* purchaser for a valuable consideration without notice of Mrs. Leonard's assignment? It is conceded, or perhaps I should say it is not denied, that the Leonia Heights Land Company had no actual notice of the assignment from Ryan to Mrs. Leonard. Mrs. Leonard was a friend, or a sort of family connection of Mr. Ryan, and she lived in a distant place, another state—I think she lived in Buffalo, New York—and she transacted her business with Mr. Ryan by correspondence. She trusted him implicitly. There was no way suggested by which the Leonia Heights Land Company could have received notice of the assignment of this bond and mortgage from Mr. Ryan to Mrs. Leonard except from Ryan himself. It is also beyond all question that the Leonia Heights Land Company paid a full, fair, valuable consideration for the transfer to it of the entire interest which they thought Mr. Ryan held; that is to say, a title to the property

free and clear of all encumbrances. The particulars of the consideration have not been very minutely exhibited in the evidence, but there is no question on this point.

The sole question in determining whether the Leonia Heights Land Company was a *bona fide* purchaser or not relates to the question of good faith—I incline to think that is the correct way to put it—on the part of the company. Perhaps the question might be made a little broader and put in this form: Whether the company acted in good faith and after discharging every duty in respect of inquiry in regard to the existence of Mrs. Leonard's assignment.

Now, then, it appears that the transaction between Mr. Ryan and the company was negotiated on the part of the company by the president, Mr. Paulin. We may disregard, as I have heretofore disregarded, the conveyances to and from Mrs. Cornell who, as plainly appears, had no interest which can affect the transactions which we have to deal with between the Leonia Heights Land Company, Mr. Ryan and Mrs. Leonard. As I have said, the company paid Mr. Ryan in stock and mortgages full value for the land. I think it appears that Ryan had paid about $750 an acre for the land in question. There is no dispute that the mortgage which Mr. Ryan had received originally upon this property for $6,000, which he subsequently assigned to Mrs. Leonard, was what was called a dummy mortgage, Ryan holding the land at the time in the name of the mortgagor, one Flood. For purposes of his own he took on these six lots a mortgage for $6,000, the mortgage being proved to have been for at least twice the value of the property. It was not a mortgage which could have been readily assigned excepting in the way in which Mr. Ryan assigned it to Mrs. Leonard, namely, through a gross fraud practiced by him upon her.

When Mr. Paulin was negotiating with Mr. Ryan for the purchase of this property by the land company in which they both were interested very largely, a search was made and the mortgages which were upon the property were all disclosed and this particular parcel containing, I think, six lots covered by Mrs. Leonard's mortgage was found to be unencumbered by that mortgage because of the apparent merger.

4

These facts being disclosed to the company and its president, Mr. Paulin, it became the duty of the company to inquire. This is a very important point. In one or two cases which were cited the purchaser failed to get protection from a statute somewhat similar to ours because he made no inquiry whatever. It certainly is a very significant fact if a party who, on the record, holds both the equity of redemption and also a bond and mortgage, when offering the whole property—the whole fee—for sale, does not exhibit and offer to deliver the bond and mortgage which, according to the record, he holds. No doubt such a situation calls for investigation. But in this instance, in my judgment, the Leonia Heights Land Company fully discharged the duty which was cast upon them to make inquiry.

I have pointed out, and it must be borne in mind in connection with this point, that that mortgage was not one which, from the nature of the case, a purchaser would suppose Mr. Ryan could readily transfer. But if the company could, or should, have surmised that Mr. Ryan may have had this dummy mortgage made for twice the value of the land in order to assign it to somebody and perpetrate a fraud, how could they discover who that party—that possible assignee—might be, except through Mr. Ryan?

It appears from the evidence, which is not contradicted, that Mr. Paulin persisted for two weeks before the title was taken on behalf of the company in endeavoring to get this bond and mortgage from Ryan. Mr. Ryan said first that he presumed he had the mortgage papers at the hotel where he was then stopping, and he would endeavor to find them and produce them. This was a scandalous falsehood. Mr. Ryan certainly knew he could not produce those papers. He had been paying the interest on this mortgage to his client, and practically his beneficiary who trusted him. Mr. Paulin says that after they had persisted for some time in endeavoring to procure the bond and mortgage from Mr. Ryan, he, Ryan, said they must be misplaced, but he would find them. In other words, Ryan put off the complainant and finally represents that the papers had been lost. Mr. Ryan, at the time of this transaction, it seems, was a man of financial responsibility, and the indications are that those who were asso-

ciated with him would not have suspected that he could have been guilty of the gross fraud that he practiced upon Mrs. Leonard. Mr. Paulin also says that they knew that Mr. Ryan was careless about his papers. The fact that no assignment appeared of record, of course, added to the force of Ryan's representations.

What more could the Leonia Heights Land Company have done in the way of prosecuting inquiries to discover whether this bond and mortgage had been assigned in any way by Mr. Ryan? In my judgment, they did all that they could do, and they, therefore, must stand before the court within the purview of section 54 of the Conveyancing act as a *bona fide* purchaser for a valuable consideration without notice, actual or constructive, of the outstanding mortgage held by the complainant under an unrecorded assignment, and must also occupy the corresponding favorable position under section 34 of the act concerning mortgages.

Of course, the transaction between Ryan and the Leonia Heights Land Company effected a merger and gave the company a title free from the mortgage, unless Mrs. Leonard can assert her unrecorded assignment against this company, which I find under the provisions of section 54 of the act in relation to conveyances and in the light of the evidence in this case she cannot do.

Of course, equity disregards mere forms in a transaction like this. It is evident, as counsel for complainant seemed to concede, that if the Leonia Heights Land Company had divided the warranty deed into two instruments, making one a conveyance of the equity of redemption and the other a release from the mortgage, or had split the consideration which it paid into two portions, and one of these portions had been accepted as the price of the equity, and the other as the payment of the mortgage, Mrs. Leonard's assignment would be void, or, to speak more accurately, her mortgage would be deemed paid, as against the title of the Leonia Heights Land Company under section 34 of the act concerning mortgages.

The same result would seem to follow in case, after exhausting all inquiries for a possible assignee and being satisfied with the

truthfulness of Mr. Ryan's representation that he still owned the mortgage but had mislaid it, the Leonia Heights Land Company had taken an assignment of the bond and mortgage from Mr. Ryan. The essential and controlling fact in this affair was the payment by the Leonia Heights Land Company to Mr. Ryan of the full value of the two estates, which both parties knew Mr. Ryan at some time had held, after this company by its agents had exhausted every reasonable means to procure the bond and mortgage and having the firm conviction—in my judgment, entirely justifiable under the circumstances—that Ryan had never transferred the mortgage to anyone.

What erroneous theories of the exact nature of the transaction the president of the Leonia Heights Land Company had does not, in the slightest degree, concern Mrs. Leonard, or affect any interest which she had under her assignment, provided he paid Ryan in good faith full value for both interests in the land which, according to the record, Ryan held. Whether the Leonia Heights Land Company, in fact, paid for this mortgage interest merged in the land, or unmerged and apparently held by Mr. Ryan, is entirely immaterial for all purposes relating to fixing the status of Mrs. Leonard's unrecorded assignment under section 34 of the act concerning mortgages.

This is not a case of hardship under our statutes such as might found or suggest some *argumentum ab inconvenienti* against the construction which I have made. Mrs. Leonard's loss is not attributable to our laws which she in her ignorance disregarded, but to her blind confidence in a man who betrayed her trust and defrauded her. She never saw these vacant lots or knew their value, but accepted a mortgage upon them from Ryan accompanied by his personal guaranty for double the value of the lots without, as she testified, making any inquiry of anybody, either as to value or title. She says she knew nothing about the affair but "depended upon Mr. Ryan's honesty."

The evidence seems to show that Mrs. Leonard made Mr. Ryan her agent or trustee for the purpose of giving her a safe mortgage upon property of adequate value and then protecting such investment by observance of all legal requirements, including the recording of the assignment. There is no evidence that her mind

was ever directed toward the question of recording her assignment, but she appears to have allowed this most important part of her business to be left absolutely within the control of her plenary agent, Mr. Ryan.

Under these circumstances, as between Mrs. Leonard and the Leonia Heights Land Company, it seems to me that our recording acts would be quite imperfect if we were obliged to construe them so as to place the loss which falls upon Mrs. Leonard because her trustee left her assignment unrecorded, upon this innocent purchaser, the Leonia Heights Land Company, rather than upon herself. I should be sorry to be obliged to construe the sections of our statutes, which I have referred to, so as to bring about such a result. No system of laws could protect this unfortunate lady against· the injurious results of her misplaced confidence.

The following are the citations of the statutes hereinbefore referred to and construed:

An act respecting conveyances (Revision.of 1898), *P. L. 1898 pp. 677, 690 §§ 21, 54; 2 Comp. Stat. pp. 1541, 1553 §§ 21, 54.*

An act concerning mortgages (Revision of 1874), *3 Comp. Stat. p. 3419 § 34.*

The following are a few of the cases which have been cited by counsel and through which access can be had to the most important expressions of judicial opinion having a bearing more or less direct upon the questions raised in this case: *Harrison* v. *N. J. R. & T. Co., 19 N. J. Eq. (4 C. E. Gr.) 488; Weinberger* v. *Brumberg, 69 N. J. Eq. (3 Robb.) 669; Purdy* v. *Huntingdon, 42 N. Y. 334; Curtis* v. *Moore, 152 N. Y. 159.*